RICHARD H. STILWELL, Respondent, v. COVENANT MUTUAL LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, February 13, 1900.

1. Contract: RECEIPT FOR MONEY: SUIT ON: AGAINST INSURANCE COMPANY. Suit on a receipt for money received by the Covenant Mutual Life Insurance Company of St. Louis, by the party to whom the receipt was given; the money paid being for the first

premium on a proposed policy of insurance for one thousand dollars; on the reverse side on the receipt sued on there was indorsed, "If a policy is not issued and delivered within thirty days, a statement of the facts must be mailed to the home office of the company at St. Louis, Missouri; and if not delivered in forty days, or cause of delay explained, the application may be considered declined, and demand made for the return of the actual payment made." This indorsement was regarded by all parties as part of the contract sued on: *Held*, as the policy was not issued in forty days after the issuance and delivery of said receipt, and no explanation of the delay offered, the plaintiff, under the terms of the contract contained in the receipt, had a right to assume that his explanation had been rejected and demand the return of his premium note, as was ruled by the lower court.

2. ——: ——: ——: APPLICATION: WAIVER. Although the application for insurance required that the applicant should submit to a proper medical examination, yet on his failure to do so, defendant should have taken advantage of such breach, retained the premium and refused the policy and notified the plaintiff to that effect, but having failed to do so, the same was waived.

3. ——: ——: ——: NOTE NOT RETURNED. The verdict and judgment for the sum paid the Bank of Hannibal by plaintiff for his note, was properly recoverable off of the insurance company and the judgment of the trial court is accordingly affirmed.

Appeal from the Hannibal Court of Common Pleas.—*Hon. David H. Eby*, Judge.

AFFIRMED.

*Geo. A. Mahan* for appellant.

(1) This being a naked action at law to recover the money, plaintiff must show exact compliance with the terms of the contract. Pomeroy on Contracts, secs. 371-378; 2 Parsons on Contracts, 66; Eyreman v. Mt. S. C. Ass'n, 6 Mo. 498; Helm v. Wilson, 4 Mo. 41; Railway v. Levy, 17 Mo. App. 507. (2) Under the application for insurance which was the basis of the contract, it was plaintiff's duty to submit to a full, free and complete medical examination, and

to allow the physician to make such examination as he deemed best.    Bishop on Contracts [Enlarged Ed.], sec. 241; Union Depot Co. v. Railroad, 113 Mo. 225.  (3)  Plaintiff having refused to submit to an examination for stricture, directly violated his part of the contract and has no cause of action against defendant.    Tuft v. Sams & Son, 47 Mo. App. 488; Billup v. Daggs, 38 Mo. App. 369; Turner v. Meltier, 59 Mo. 535; Doyle v. Turpin, 57 Mo. App. 84.   (4)   Stillwell not only failed and refused to comply with the contract for insurance, but he violated the receipt or promise obligatory No. 7584 on which he brought suit.   He agreed therein that "if a policy is not issued and delivered in thirty days, a statement of the facts must be mailed to the home office of the company at St. Louis, Missouri;" he prevented the delivery of the policy in thirty days but did not mail the facts to the home office of the company.   This is a condition precedent, and plaintiff can not recover.   Nicholas, Shephard & Co. v. Larkin, 79 Mo. 271; Osborne v. Henry, 70 Mo. App. 26; Kingman & Co. v. Schulenberger, 64 Mo. App. 548; Roy v. Boteler, 40 Mo. App. 222.  (5)  Under such conditions it became the absolute duty of defendant to delay and obtain from whatever source possible, all the information it could in reference to Stillwell's health, and in doing so it simply acted the part of a well conducted business institution, worthy of public confidence.   The delay was caused by the plaintiff; he can not take advantage of his own wrong.   Stillwell has no cause of action against defendant.   Eldridge v. Fuller, 59 Mo. App. 44; Murphy v. Stickley-Simonds Co., 82 Hun. 158; Dunn v. Sleabing, 55 N. Y. Sup. Ct. 533; Ketchum v. Zerlsdorff, 26 Wis. 514; Weeks v. Little, 89 N. Y. 566.

*Schofield & Schofield* for respondent.

(1)  By the terms of the contract the defendant was bound within forty days either to issue its policy or explain

to plaintiff the cause of the delay in so doing. It did not issue the policy, and the evidence leaves it in dispute both whether there was any cause of the delay and whether such cause was explained to plaintiff. Even if we assume that plaintiff's refusal to submit to the introduction of the sound, (he refused nothing else), caused the delay, he was led to believe that mode of examination was not necessary. Neither of the examining physicians insisted upon and both recommended the risk without it. If the medical director regarded this as so essential as to require further time to investigate, Stillwell was entitled to know it. The company had contracted that it would so explain to him. He testified it did not do so. It was for the jury to determine whether it had done so or not. The instruction as offered would have authorized a verdict for defendant even if the jury had found this issue for plaintiff. (2) The only thing that Stillwell refused to submit to, even on the evidence of defendant, was the introduction of the sound. The assumption contained in this instruction that had plaintiff submitted to the test the policy would have been promptly issued without delay is wholly unwarranted by any evidence in the case. There was no evidence upon which the jury might have so found. No evidence that the delay would have been any less even if plaintiff had submitted to the introduction of the sound. (3) But even if the admitted knowledge of the facts by the home office would not have excused plaintiff from mailing the statement of the facts, still the instruction was properly refused because it required such written statement to be mailed within forty days from the date of the application. There is no such provision in the contract. On the contrary on the face of the contract, defendant's liability to return the premium paid, becomes absolute if the applicant should notify the company "within sixty days from the date hereof, at its home office in St. Louis, Missouri, that said policy has not been delivered, nor payment returned."

BLAND, P. J.—Plaintiff made application to the defendant for a policy of insurance on his life. For the first year's premium of three hundred and thirty-four dollars, he executed his negotiable promissory note and delivered it to M. T. Brown, a soliciting agent of defendant, who immediately discounted the note in bank. At maturity the plaintiff paid the note. Contemporaneously with making the application and giving the note, plaintiff was given the following receipt contract:

"No. 7584.

## COVENANT MUTUAL LIFE INSURANCE CO. OF ST. LOUIS.

Laclede Building, Olive and Fourth Streets.
$334.

"Received Hannibal, Oct. 20, 1897, of R. H. Stilwell Three Hundred and Thirty-four Dollars, being the first premium on a proposed policy of insurance for $10,000 dollars, on the life of............for which application has this day been made to the Covenant Mutual Life Insurance Company, of St. Louis, said policy of insurance to take effect and be in force from the date hereof. Provided, that said application is approved by the company and a policy issued; but should the applicant be rejected, the company shall incur no liability whatever, and the amount paid as above shall be returned to said R. H. Stillwell upon a surrender of this receipt.

"The agreement herein contained, to return said payment, will not be binding on said company unless it is notified within sixty days from the date hereof, at its office in St. Louis, Mo., that said policy has not been delivered nor payment returned.

Countersigned............, 189        M. T. Brown, Agent.

"Void unless issued and countersigned on or before the

first day of January, 1897, by M. T. Brown, Agent.    C. E.
Pilling, Secretary."

The policy of insurance was not made and delivered to
plaintiff within the time agreed on; he refused to accept it
when delivery was tendered, and brought suit on the receipt
contract, above set forth, to recover the amount he had paid
on the first year's premium.

The answer of defendant, omitting caption, is as follows:

"Now comes the defendant, and for amended answer
herein admits that it is a corporation, duly incorporated as in
the petition stated.    Admits that plaintiff on October 20,
1897, made application for insurance through M. T. Brown,
defendant's authorized agent, for ten thousand dollars, and
executed and delivered his promissory note for $334 for the
first annual premium, as alleged in the petition; and that
said note was negotiated and cashed at the Bank of Hannibal.
Admits the execution and delivery to plaintiff of the receipt
and promise obligatory No. 7584, dated October 20, 1897,
and filed with the petition."

Defendant denies each and every other allegation in said
petition contained.

Further answering, defendant says the plaintiff made
the application for insurance named in the petition in writing
and delivered the same to said M. T. Brown, a copy of which
application is herewith filed, marked "A."    That by the
terms of said application said plaintiff promised and agreed
with defendant that the "application, together with the
answers made to the medical examiner in continuation of and
forming part of the application, shall be a consideration for
and the basis of the contract of the Covenant Mutual Life
Insurance Company under any policy issued under this appli-
cation.    *    *    *    That the company shall incur no liability
under this application until it has been received and approved,
the policy issued thereon by the home office, and the premium

has actually been paid to and accepted by the company or its authorized agent, during my lifetime and good health."

That, in compliance with said contract, the plaintiff, on the twenty-first day of October, 1897, submitted himself to a medical examiner, and in reply to questions, among other answers, said he has a stricture but it gives him no trouble; but plaintiff then and there declined and refused to allow said medical examiner to duly and fully examine him in reference to said stricture; that owing to such conduct on part of plaintiff, the medical director of defendant, on October 23, 1897, did not advise the risk and the issuance of a contract of insurance on his said application, and the plaintiff was duly notified thereof.

Defendant further says that on the second day of November, 1897, the said plaintiff contracted and agreed with defendant, through its agent, to reapply for insurance on his life for said sum of $10,000, and did make such application and on said date again submitted himself for examination to a medical examiner, and, among other answers given to said medical examiner in naming the diseases he had been afflicted with, said, "he had stricture of the urethra nine or ten years ago; was told by a doctor he had stricture; was never treated for it and at this time passes a full stream of water without pain." But, said Richard H. Stillwell positively declined and absolutely refused to permit the medical examiner to insert a sound or instrument to determine the character of said stricture, nor would he in anywise submit to a due and proper medical examination in that behalf. Said Stillwell in each of said medical examinations warranted that to his best knowledge and belief he was in sound physical condition and a proper subject for life insurance. Defendant says that said conduct on part of said Stillwell interfered with, delayed and retarded it in completing and perfecting its said contract of insurance on his life, but that the same was

done as early as possible under the conduct and behavior of said plaintiff, and that whatever of delay there was, was occasioned solely and only by said Richard H. Stillwell in his failure and refusal to comply with his part of the contract; and that such delay was fully explained to said plaintiff.

That plaintiff did not notify defendant that the policy had not been issued and delivered under the terms of the receipt and promise obligatory, No. 7584. Wherefore defendant asks leave to go hence with its costs in this behalf expended.

The issues were submitted to a jury, who returned a verdict for the plaintiff. After unsuccessful motions for new trial and in arrest, defendant appealed.

By his application plaintiff agreed, among other things, to submit to a proper medical examination, and he warranted that his answers to questions of the medical examiner to be true. It was also agreed that no policy should be issued or the defendant bound on the contract, until the medical examination should be examined and the risk approved by defendant's medical director at the city of St. Louis (the home office of defendant). On October 21, 1897, plaintiff presented himself for medical examination to Dr. Chowning at Hannibal, Missouri (the place of his residence). In reply to a question by Dr. Chowning, he said he had stricture, but that it gave him no trouble. Whether the physician required him to submit to a physical examination of the parts affected, is left in doubt from the evidence; no such examination, however, was made by Dr. Chowning, but he recommended the risk and forwarded his examination to Dr. F. A. Stevens, defendant's medical director of St. Louis. Dr. Stevens refused to advise the risk, and plaintiff and Brown, the agent at Hannibal, were advised of this action on the part of Dr. Stevens. On receipt of this information Brown advised plaintiff to submit to a second examination. Plaintiff readily as-

sented to do so, and on the second day of November went before Dr. J. N. Baskett at Hannibal for examination. To Dr. Baskett he stated that he had stricture of the urethra; that he had been told so by a doctor nine or ten years before, but that he had never been treated for it. To determine the matter and to learn the extent of the stricture, Dr. Baskett testified that he proposed to pass a sound through the urethra, but plaintiff refused to submit to the operation. Dr. Baskett did not believe plaintiff had stricture, and so stated in his report of the examination and recommended the risk. Stillwell denied this part of Baskett's testimony. This second examination was referred to Dr. Stevens, who again refused to pass it. Brown and Horn both testified that after the second examination of plaintiff, the defendant did not finally reject plaintiff's application, but took time to investigate and went to work in that direction, and that they notified plaintiff that defendant was investigating his case and that they were sure the policy would eventually be issued. Plaintiff denied having received any such notice or information from Brown or Horn. Dr. Stevens was dead, and what he did, if anything, to further investigate plaintiff's physical condition, was not in evidence. On December 8, 1897, defendant issued a policy on plaintiff's application, had it registered by the State Insurance Commission and forwarded to the plaintiff, who received it through the mail December 29; he immediately returned the policy to defendant, declining to accept it, and demanded the return of his premium note (not then matured). Defendant, instead of answering plaintiff's demand, sent the policy to a bank in Hannibal, to be delivered to plaintiff, who again refused to accept the policy. The bank's cashier then delivered it to Brown; Brown handed it to Horn to be delivered to plaintiff; Horn swore he mailed it to plaintiff; plaintiff swore he did not receive it, and no further trace was made of it. In this state of the evidence defendant offered

in evidence a copy of the original policy, which was excluded by the court, to which ruling defendant duly excepted. Defendant also offered to prove what Dr. Stevens had said in reference to what he was doing, or had done, toward an investigation of plaintiff's condition of health, after the risk had been "not advised" on the two medical examinations. This testimony was rejected on the ground that it was hearsay; to this ruling defendant excepted. On October 28, plaintiff was notified by letter from the home office that his application had been rejected by defendant's medical director; on the thirtieth he demanded a return of his note, if no policy was to be issued, but on the second of November, two days after requesting a return of his money, he presented himself for a second medical examination, with a view and for the purpose of procuring the issuance of a policy. Plaintiff, however, was not advised from the home office of defendant that this second examination was unsatisfactory, and no correspondence was had between plaintiff and the home office after the second medical examination, until December 15, 1897, when plaintiff mailed the defendant the following letter:

"Hannibal, Mo., Dec. 15, 1897.
"Covenant Mutual Life Insurance Co.,
    St. Louis, Mo.

"Gentlemen:—I hold your receipt No. 7584 of date Oct. 20, 1897, for $334 being one year's premium on a proposed policy for $10,000 insurance on my life, signed by M. T. Brown, Agent, and O. E. Pilling, Secretary. Delay in issuance of this policy indicates to me the matter is still in abeyance. Pending this abeyance, I desire now to refuse to accept the insurance and ask return of note given for amount of premium. Please comply at once.

"Respectfully,

"R. H. Stillwell."

The only answer he received was the policy. On the

reverse side of the receipt contract sued on, is the following indorsement: "If a policy is not issued and delivered in thirty days a statement of the facts must be mailed to the home office of the company at St. Louis, Mo.; and if not delivered in forty days, or cause of delay explained, the applicant may be considered declined and demand made for the return of the actual payment made." This indorsement is, and was so recognized on the trial, as a part of the contract, binding upon both parties. Plaintiff did not at the end of thirty days from the date of his second examination mail a statement to the home office that he had not received a policy; nor did the defendant at the end of forty days thereafter give to plaintiff an explanation of the cause of delay in the issuance of the policy, unless such explanation was conveyed by Brown to plaintiff; but we do not think that any verbal explanation or notice given by Brown, the soliciting agent of defendant at Hannibal, would fulfill this requirement of this stipulation in the contract. The notice to be given by the applicant was to be to the home office; the final determination of whether or not a policy should be issued had to be made at the home office; the policy had to be issued by the home office, and the contract clearly imports that if after forty days the issuance of a policy was held in abeyance, the cause of it could only be known at the home office, and plaintiff had the right to look to the home office for notice that the issuance of a policy was held in abeyance, and the reason therefor. Had such notice been given, the plaintiff might have removed the cause of delay; he certainly had the right to make the effort; no such notice was given, and plaintiff, under the terms of the contract, had the right after the expiration of forty days from the date of his application, to assume that his application had been rejected, and demand the return of his premium note, as he did so by his letter of December 15. But it is contended by defendant that plaintiff committed the

first breach of the contract by refusing to submit to a reasonable and proper medical examination. If this be true defendant might have elected to take advantage of this breach, retained the premium, and refused the policy. But to exercise this right under the contract, it was bound to give the plaintiff notice and afford him an opportunity to submit himself to the required medical examination. Having failed to do this, it can not now retrace its steps and take advantage of this breach, which its conduct clearly indicates it waived. Riggins v. Railroad, 73 Mo. 598; St. Louis v. Wiggins Ferry Company, 88 Mo. 615. There was no error in rejecting a copy of the policy as evidence, as contended for by appellant, for the reason there is no issue raised by the pleadings to which it was relevant.

Defendant also insists that error was committed by the rejection of the conversation had between Brown and Dr. Stevens, about what Dr. Stevens had done, or was doing, toward investigating the application of plaintiff for insurance. Its contention is that the conversation was a part of the *res gesta*, and should for that reason have been admitted. The rejected testimony which defendant offered is not set out in the bill of exceptions, and we are unable to say whether it was or was not admissible as a part of the *res gesta*.

Discovering no reversible error in the record, the judgment is affirmed. All concur.