## SUMMERS v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

Pleading — Demurrer — Life Insurance — Policy of Insurance, Failure to Deliver — Damages — Action for Return of Premium—Money Had and Received—Completed Contract.

1. If any one of several causes of action separately stated in a petition be sufficient, a general demurrer to the petition as a whole should be overruled.

2. Under the code, pleadings are to be liberally construed, and the common law rule requiring that they be construed most strongly against the pleader is not applicable.

3. A petition based upon the theory that the defendant insurance company is liable in damages for breach of contract to issue a policy of life insurance, but sufficient for money had and received, is not demurrable, though the amount of recovery should be held limited to the premium paid or a proportionate part thereof.

4. A petition being sufficient for money had and received, it is not material on demurrer whether the amount sued for is recoverable, if at all, as damages for breach of contract, or as money had and received.

5. The action having been brought against a foreign life insurance company for its failure to issue a life insurance policy, and the petition alleging that plaintiff dealt with agents of the company, and that the policy was to be subsequently written, that the agents were authorized to solicit contracts of insurance, make contracts for policies of insurance, and to receive and receipt for money and premiums thereon; *Held,* that the further allegation that they were authorized generally to transact defendant's business in Wyoming is not to be construed as averring their authority to write and issue policies.

6. Where plaintiff executed and delivered to the agents of defendant insurance company a note in consideration of an agreement to deliver to plaintiff a life insurance policy within a stated time, and the defendant received and appropriated the proceeds of the note, and failed to deliver the policy, the plaintiff, being without fault, is entitled to consider the contract as rescinded by the defendant, and recover the sum advanced as money had and received.

7. Where the parties intend that a contract shall be closed and consummated prior to the formal signing of a written draft, the terms having been mutually understood and agreed upon, they will be bound by the contract actually made, though it be not reduced to writing; but if they do not intend to close the contract until it shall be fully expressed in a written instrument properly attested, then there will be no completed contract until the agreement shall be put into writing and signed.

8. The petition alleging that, in consideration of plaintiff's note for the first year's premium, defendant's agents promised that the defendant would issue and deliver to plaintiff

within a stated time a policy of life insurance containing certain alleged stipulations, and that, as a part of the oral contract, it was agreed that the premium note should not be transferred or negotiated, but should remain in defendant's possession until the policy should be written and delivered, found to be satisfactory, and approved and accepted, and that the defendant received the note and appropriated its proceeds, but failed and refused to deliver the policy; *Held,* on demurrer, that a completed contract of insurance was not shown so as to bind the defendant, notwithstanding the failure to deliver the policy, and that a cause of action was alleged for a return of the premium, as for money had and received.

[Decided March 28, 1904.]                    (75 Pac., 937.)

ERROR to the District Court, Uinta County, HON. DAVID H. CRAIG, Judge.

William M. Summers brought this action against the Mutual Life Insurance Company of New York. A demurrer was sustained to an amended petition, and the plaintiff refusing to further plead, judgment was rendered in favor of defendant for costs. Plaintiff instituted proceedings in error. The facts are stated in the opinion.

*J. H. Ryckman,* for plaintiff in error.

Parol contracts of insurance are valid. (Ellis v. Ins. Co., 50 N. Y., 402; Trustees, &c., v. Ins. Co., 19 N. Y., 305; Ins. Co. v. Ins. Co., 19 How., 318; Potter v. Ins. Co., 63 Fed., 382; Worth v. Ins. Co., 64 Mo. App., 583; Hicks v. Assurance Co., 162 N. Y., 284; Newark Mach. Co. v. Ins. Co., 50 O. St., 549; Ruggles v. Ins. Co., 114 N. Y., 415; Ins. Co. v. Shaw, 94 U. S., 574.)

Whether this is a parol contract of insurance, or a contract to issue a certain kind of a policy, is immaterial. The plaintiff may either bring a suit for specific performance or for damages for breach of the contract. He has chosen to do the latter. (Ins. Co. v. Ins. Co., 7 Bush., 81; Ins. Co. v. Colt, 20 Wall., 560.) And a parol contract of insurance is like any other contract and governed by the same rules;

if one party denies the contract or refuses to perform, the other may take him at his word and bring his action for damages. (Angell v. Ins. Co., 59 N. Y., 171; Hubbell v. Ins. Co., 100 N. Y., 41; Ins. Co. v. Shaw, 94 U. S., 574.)

A petition setting up a parol contract to insure plaintiff's life, and to issue a policy in accordance with said contract, and alleging the payment by plaintiff to the defendant of the first annual premium, and the breach of such contract, and claiming damages therefor, states a legal cause of action. (Humphry v. Ins. Co. (15 Blatch.), 35 Fed. Cas., 6874.)

The authority of the agents to make such a contract as is alleged cannot be raised by a general demurrer to the petition. "No case can be found which holds that where the agent * * * takes the property of one and gives it to his principal, the principal is not liable for such property or its value." (Min. Co. v. Min. Co., 11 Colo., 223; Brown v. Ins. Co., 165 Mass., 565; Austrian v. Springer, 94 Mich., 343; Ins. Co. v. Wilkinson, 13 Wall., 234; Sawyer v. Equitable Co., 42 Fed., 30; La Marche v. Ins. Co., 58 Pac., 1053; O'Brien v. Ben. Soc., 22 N. E., 954; Maxson v. Llewelyn, 54 Pac., 732; 1 Black Com., 431; R. Co. v. Dunn, 19 O. St., 162; Ayers v. Ins. Co., 17 Ia., 176; Moir v. Hopkins, 16 Ill., 313; Ins. Co. v. Minch, 53 N. Y., 144; Ins. Co. v. Cellerd, 38 N. J. L., 480; Root v. French, 13 Wend., 570; Walsh v. Ins. Co., 73 N. Y., 5; Ins. Co. v. Gorman, 40 S. W., 571; Mathers v. Ins. Co., 11 L. R. A., 83; Halloway v. Griffith, 32 Ia., 409; Day v. Ins. Co., 29 A. R., 694; McKee v. Ins. Co., 75 A. Dec., 129; Masterson v. Mayor, 42 A. Dec., 48; R. R. Co. v. Richardson, 135 Mass., 473; Philpot v. Taylor, 75 Ill., 309; Bennett v. Lockwood, 20 Wend., 223; Kaiser v. New Orleans, 17 La. Ann., 178; Lightbody v. Ins. Co., 23 Wend., 18; Lister v. Allen, 31 Md., 543; 100 A. Dec., 78; Carmichael v. Buck, 70 A. Dec., 227; Newman v. Smith, 18 P., 792; Ins. Co. v. Neiberger, 74 Mo., 167; 3 Pars. Con., 167; Cooley Torts (2d Ed.), 105; Rich v. R. R. Co., 87 N. Y., 382;

Crater v. Benninger, 38 N. J. L., 513; Bank v. Williams, 63 Pac., 744; Church v. Beach, 26 Conn., 355; Welch v. Durand, 36 Conn., 182; 4 A. R., 55; Anson Cont. (2d Am. Ed.), 406.)

"Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness." (Brink v. Ins. Co., 8 N. Y., 113.)

*T. S. Taliaferro, Jr.,* and *John W. Lacey,* for defendant in error.

It is clear from the authorities cited by counsel and from innumerable others which might be cited to the same purport, that a contract of insurance may exist in parol and be shown by parol, and that the policy is merely an evidence of the contract of insurance. (Newark Machine Co. v. Kenton Insurance Co., 50 O. St., 549; Ruggles v. Insurance Co., 114 N. Y., 415; Insurance Co. v. Shaw, 94 U. S., 574; Ins. Co. v. Kuessner (Ill.), 45 N. E., 540.)

In each of the cases cited the parol contract of insurance was enforced after a loss had occurred, and the enforcement was upon the ground that the insurance itself was in force upon the parol contract to issue a policy. There is the same right of action as if the policy had issued. (Sproul v. Assur. Co. (Or.), 54 Pac., 180; Ins. Co. v. Stone (Kan.), 58 Pac., 986.)

This action is not an equitable one for specific performance, but is an action at law for damages. It becomes, therefore, important for us to consider what damages may be recoverable in such a case. In a loose way it has been sometimes said that in case of a failure to issue a policy when a clear parol contract has been made agreeing to issue such policy, and, in case, further, that a loss has actually occurred after the execution of the parol contract, an action may be sustained for the failure to issue the policy. In all such cases, however, the damages recovered have been for the loss sustained just as though a policy had in

fact issued. (See Hicks v. Assur. Co. (N. Y.), 56 N. E., 743; Humphrey v. Ins. Co., 12 Fed. Cases, No. 6874.)

Under the averments of the amended petition the action is an action upon the policy as if issued. But the plaintiff has suffered no loss against which the policy insured him; therefore, he has sustained no damages which can be recovered. He had at all times a clear and specific contract of insurance which was applicable to him and which insured his life in the same manner as if the policy had actually issued. Now, when seven years have expired, with but a single payment of premium, with the policy long since, under the terms pleaded, lapsed, the plaintiff comes into court without having suffered any loss whatever and brings not an action for specific performance to compel us to give him his evidence of his contract, but with an action for damages when he has sustained none, since we had carried his risk in as broad and ample a manner as we had agreed and were at all times during the period covered by the payments so far made bound to stand responsible for a loss sustained within the policy. And by his silence he admits that the demands which he had made upon us for a policy were made just before bringing his action, seven years after the parol contract of insurance, when he had failed to make any of the annual payments required under the terms of the agreement, and likewise by his silence admits that his demand for a return of his premiums paid was made just before the bringing of the action. And this without any averment that the company in carrying his risk had failed to earn the premium paid. By this silence the plaintiff admits that the full premium paid had been earned by the company in carrying plaintiff's risks. The whole failure alleged against the defendant was a failure to give to the plaintiff the written evidences of the contract between the parties, the contract itself being at all times in full force and available to the plaintiff as broadly as if the written evidences had been delivered to him. Moreover, in this case, even if the plaintiff had suffered a loss,

it is not averred that there was any difficulty whatever in proving the terms of this contract. Indeed, plaintiff sets forth the contract very explicitly and is himself a witness capable of proving its terms, and it is not shown that the defendant ever denied these terms. Therefore, even if the plaintiff had suffered loss, he would, so far as this petition discloses, have had no difficulty in requiring us to make good the loss, no difficulty in proving very clearly his contract. In every aspect of the case, then, as a suit for damages upon the contract or for its breach, within the principles laid down even by the authorities of the plaintiff, there were no damages which he could recover, and hence no cause of action.

Even if demand for the policy had been made within a short time after the consummation of the oral agreement, and if upon such demand the defendant failed and refused to deliver the policy, then, under the averments in this petition, if an action could be maintained at all at law when no loss had occurred from such failure to deliver the policy, the damages would be only nominal, because the measure of damages would be in that case the amount of loss sustained by the plaintiff under the policy.

The plaintiff's position will not be in any wise improved by any consideration of the principles of rescission. In the absence of an averment that the contract was· upon the plaintiff's part rescinded, this court cannot find that it was so rescinded. It is true that the plaintiff avers that at some time not stated, which means seven years after the consummation of the agreement, he demanded the repayment to him of the $454, but this averment does not amount to an averment of rescission—first, because it is not shown that he offered to release the defendant from its agreement and burden of carrying his risk; second, because the defendant had already carried his risk, and, so far as the petition shows, had carried it for seven years, although the plaintiff had made but a single one of the premium payments and by his contract, as he sets it forth, had agreed

to pay an equal amount annually.    There is no averment that the payment of the single premium would carry the risk beyond the first year, and there is certainly no presumption that it would carry it beyond the seven years. It is certain that the defendant earned something by carrying the risk of the plaintiff, as the petition shows it was carried.    It is not averred that the defendant abandoned the contract itself or refused to carry the risk.    On the contrary, the averments, as far as they go, are that the risk was still being carried.    (Lovell v. Ins. Co., 111 U. S., 264.)

If the case be considered one upon rescission of the contract, there would be nothing more than nominal damages due to the plaintiff, and hence this court should not reverse.    (Ins. Co. v. McHugh, 7 Neb., 66; Rumbold v. Ins. Co., 7 Mo. App., 71.)

Even if the averments had been sufficient to show that at some unknown time the contract was rescinded or abandoned by the defendant, still with no averment as to *time* of rescission or abandonment there is no basis for ascertaining how much of the premium paid was actually earned prior to the rescission.    Hence, there is no basis for calculating that there is any unearned balance of the premium paid which ought to be repaid to the plaintiff because unearned at the supposed rescission or repudiation of the contract.

The plaintiff could not have recovered costs against the defendant upon a recovery of nominal damages.    (Rev. Stat. 1899, Sec. 3790.)    But this court, as well as all the other courts in the State, "must in every stage of every action disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect."    And upon this ground it is that this court and other courts under similar codes have refused to reverse when the only matter that could be recovered was nominal damages.    (Hecht v.

Harrison, 5 Wyo., 279; Elliott's App. Proc., Sec. 636;
Bacon's Abridgement, Title Trial; Jennings v. Loring,
5 Ind., 250; State v. Miller, 5 Blackf., 581; Smith v.
Mach. Co., 26 O. St., 562; Hibbard v. W. U. Tel. Co., 33
Wis., 558; Haven v. Mfg. Co., 40 Mich., 286.)

POTTER, JUSTICE.

To the amended petition filed in this action, containing
seven causes of action, a general demurrer was sustained,
and thereupon, the plaintiff declining to plead further, a
judgment was rendered in favor of defendant for costs. Of
that judgment the plaintiff complains, and assigns as error
the order sustaining the demurrer, and the rendition of judg-
ment for defendant. If no error was committed in sus-
taining the demurrer, there is no error in the judgment.
The demurrer being general to the entire petition, it follows
that if any one of the several causes of action is sufficient,
the demurrer should have been overruled.

The first cause of action sets out that in the months of
February, March, April and May, 1896, the defendant was
engaged in the general life insurance business as a life
insurance company, and that A. B. Ragsdale and H. H.
Wright were the authorized general agents of the defendant
to solicit contracts of insurance in this State, to make con-
tracts for policies of insurance, and to receive and receipt
for money and premiums thereon, and generally to trans-
act defendant's business in Wyoming. That on or about
February 27, 1896, the defendant and said Ragsdale and
Wright, as its agents, at Uinta County, in this State, so-
licited the plaintiff to contract for a policy of insurance on
his life with said defendant company in the sum of ten
thousand dollars; said defendant and said Ragsdale and
Wright representing to plaintiff that defendant greatly de-
sired to have the plaintiff to become a patron of defendant
company, and to take out a policy on his life in said com-
pany; and further representing that defendant intended
making a general canvass among plaintiff's neighbors and
friends, to secure contracts of life insurance, and it would

aid and facilitate defendant in securing such contracts to have the name of plaintiff as one of its patrons.

"That in consideration that the plaintiff would contract with the defendant and with the said Ragsdale and Wright, as the agents of the said defendant, for a policy of insurance with the defendant company in the sum of ten thousand dollars, and would then and there make, execute and deliver to the defendant and the said Ragsdale and Wright, as the agents of the said defendant, the plaintiff's promissory note in the sum of $454, payable in sixty-five days thereafter, in payment of the first annual premium on such policy of insurance, then and thereupon the defendant would issue to the plaintiff as soon as said plaintiff should pass the necessary medical examination and within sixty-five days from and after the said 27th day of February, 1896, and before said promissory note should become due and payable, a specially favorable life insurance policy in the sum of ten thousand dollars, which said policy of insurance, the defendant and the said Ragsdale and Wright, as the agents of the defendant, in consideration of the premises, then and there stated, promised and represented to the plaintiff should contain, among other stipulations, promises and agreements on the part of the said defendant company, the following provisions, to-wit:

"a. That if the plaintiff should live ten years and should pay to the defendant each year the sum of $454, plaintiff should, at the end of the ten-year period, have the right and option to demand of the defendant, and the defendant would pay him the full sum of ten thousand dollars in cash, or, if the plaintiff preferred, he should have the right to leave said sum of ten thousand dollars with the defendant and receive from the defendant annually the legal interest thereon until such time as plaintiff wished to draw the same from defendant in cash.

"b. That if plaintiff should not live ten years, but should each year until his death pay the said annual premium of $454 to the defendant, then and in that event the said sum

of ten thousand dollars should be paid to the surviving wife of plaintiff in installments of five hundred dollars per year.

"c. That if plaintiff should pay to the defendant the annual premium of $454 for three years and should be unable to pay further or become dissatisfied, plaintiff should then have the right to demand and would receive from the defendant the premiums paid by him to the defendant company in full without interest."

That said Ragsdale and Wright represented themselves as agents, to have authority to make such specially favorable contract for said policy of insurance, on behalf of the defendant; and the plaintiff, relying upon said representations and promises, and on the integrity and honesty of defendant and said agents, made, executed and delivered to said Ragsdale and Wright, as the agents of defendant, his promissory note for $454, payable to plaintiff's order in sixty-five days thereafter, and, at the request of said agents, endorsed the same in blank, and delivered it to Ragsdale and Wright as defendant's agents, in full payment and satisfaction of the first annual premium upon said policy of insurance. "And said defendant and said agents, on the part of the defendant, then and there represented and promised to the plaintiff that said promissory note should not be sold, transferred or negotiated by the defendant or the said agents before maturity, but should be held by and kept in the possession of said defendant until said special policy of insurance should be written and delivered by the defendant to the plaintiff and should be by him found in all respects satisfactory to him, and in conformity to the said parol promises made by the defendant and its said agents, and should be by the plaintiff approved and accepted."

"That in the execution and delivery of the foregoing promissory note said contract for said policy of insurance between the plaintiff and the defendant was, upon the part of plaintiff, completed, and plaintiff thereby and in all other respects fulfilled his obligations, promises and agreements

as to said policy of insurance, * * * and passed said medical examination; but that the defendant, in disregard of its promises and agreements by it made as aforesaid, has failed and neglected, and still fails and neglects, to issue to the plaintiff said policy of insurance, though often requested so to do by the plaintiff."

That said Ragsdale and Wright, as agents of defendant, in disregard and violation of said promises and contract for said policy of insurance, did, on or about March 1, 1896, sell and discount said note to North & Stone, bankers at Evanston, Wyoming, and paid the proceeds thereof to the defendant, and that thereafter said North & Stone, claiming to be innocent purchasers of said note for value before maturity, made demand upon plaintiff for payment thereof, and plaintiff paid them the said sum of $454 under protest.

That plaintiff frequently made demand upon defendant that it issue to him said policy of insurance, but it has failed and neglected so to do; that thereupon plaintiff demanded the return of the said sum of $454 paid by him for said policy of insurance, but defendant has refused and neglected to return the same to plaintiff's damage in the sum of $454 and interest thereon from February 27, 1896. A subsequent paragraph alleges, by way of special damages, that certain expenses were incurred by plaintiff for court costs and attorney fees, loss of time and mental annoyance; and the prayer is for the recovery of $2,000, and costs of suit.

The other causes of action are based upon similar claims held by other parties against the defendant company, and assigned to plaintiff. The allegations as to those causes of action are substantially the same as the first above set out. There are some slight exceptions. For instance, the second cause of action is founded upon the claim of one George Finch, whose note was for $438, given at the same time as the note of plaintiff, to mature October 1, 1896; and in his case also it is alleged that the policy was agreed to be issued before the maturity of the note, and was agreed to be held and not negotiated until the delivery and acceptance of the

policy. In that cause of action the time when said Finch submitted to a medical examination is stated as having occurred in the month of March, 1896, and said examination is alleged to have been satisfactorily passed by him. If, therefore, the failure to allege in the first cause of action the date of plaintiff's medical examination is material, which we do not decide, the defect, if any, does not appear in the second cause of action; and the latter contains substantially all the averments above set out as contained in the first cause of action. In the sixth and seventh causes of action it is alleged that plaintiff's assignors therein named paid the premium in cash. We think it will be unnecessary to consider whether that fact will make any difference in regard to the right of recovery. Those causes of action are more concisely stated. It is alleged that said agents solicited plaintiff's assignor to insure his life with defendant company, and to make a parol contract for a policy of insurance, and that the agents represented that defendant was prepared to issue a policy to said assignor, specially favorable to him, which should contain a certain provision, set out in the petition, among other provisions not set out; and that the first annual premium was paid in cash, and the medical examination was passed; but that defendant has failed and neglected to issue the policy. The damage alleged in the sixth cause of action is $500, while the premium paid was $193; and in the seventh cause of action the premium paid was $211, and damages are claimed in the sum of $500.

The theory of the petition seems to be that defendant is liable in damages for the breach of its contract to issue the policy of insurance. But if the measure of damages, assuming that the right of recovery is shown, should be held limited to the amount of the premium paid, or even a proportionate part of it, that would not warrant the sustaining of a demurrer, provided sufficient facts are set out to constitute a cause of action for the recovery of some amount. Notwithstanding the evident theory of the

pleader, the petition would seem sufficient to support a judgment for money had and received, if sufficient for any purpose. Therefore, we do not deem it very material, upon the demurrer, to consider whether the amount sued for is recoverable, if at all, as damages for breach of contract, or as money had and received. Nor is it necessary to consider the measure of damages, or the amount recoverable, unless, indeed, it should appear, as contended by counsel for defendant in error, that the only right shown, if any, is to recover nominal damages merely; in which event, it is insisted, the judgment ought not to be reversed. In plaintiff's brief it seems to be admitted that the measure of damages is the premium paid.

Plaintiff's counsel maintain that whether the petition sets up a parol contract of insurance, or a contract to issue a certain kind of policy, is immaterial, but that a suit for specific performance or for damages was open to the plaintiff. He contends that parol contracts of insurance are valid, and that a policy is only evidence of the contract, which may exist in parol, citing: Ellis v. Ins. Co., 50 N. Y., 402; Newark Mach. Co. v. Kenton Ins. Co., 50 O. St., 549; Ruggles v. Ins. Co., 114 N. Y., 415; Insurance Co. v. Shaw, 94 U. S., 574; Ins. Co. v. Ins. Co., 7 Bush, 81; 3 Am. R., 301; Angell v. Ins. Co., 59 N. Y., 171; 17 Am. R., 322; Humphrey v. Ins. Co., 15 Blatch., 35; 12 F. Cas., No. 6874.

Counsel for defendant do not dispute the principle laid down by those authorities, but rely thereon, contending that, as in the cases cited, the insurance was held to be in force, notwithstanding the policy had not issued, and the insured entitled to recover upon such parol contract for the loss which had been insured against and had occurred; so, in this case, the contract was in force, and had the death of the insured occurred while so in force, recovery might have been had regardless of the non-issuance or non-delivery of the policy. Hence, it is argued that, upon the allegations of the petition, the plaintiff and his assignors

were insured, the company had carried the risk of their deaths respectively, and no recovery is permissible for a return of the premium paid in the absence of a rescission of the contract, or a showing of absolute abandonment on the part of defendant; and that such rescission, or abandonment, and demand for return of the premium must have occurred before the premium had been earned. It is insisted that the petition, failing to show that the premium paid entitled the plaintiff or his assignors to insurance beyond the year for which it was paid, and to show a rescission or abandonment and demand within such year, does not present any right of recovery, since for all that appears the company fully earned the premium by carrying the risk agreed on for the full period required under the contract by the amount of premium paid. Defendant's counsel, therefore, treat the action as an action upon the contract to the same effect as if the policy had issued, and as no loss was sustained against which the contract insured, it is urged that no damages can be recovered; and that it would be impossible to aver a damage from a failure to have the evidence of his contract, because no loss covered by the contract was sustained, and the policy was never needed to enforce his contract.

Counsel further argue that had demand been made shortly after the consummation of the oral agreement, and if, upon such demand, the defendant failed and refused to deliver the policy, then, under the present averments, no loss having occurred, the damages would be merely nominal.

The argument presents a question of considerable nicety. The great weight of authority sustains the proposition upon which counsel are agreed, that an oral contract of insurance may be valid, and if completed by a meeting of the minds of the parties, the company will be liable for a loss occurring before the issuance and delivery of the policy. That result follows in case it is understood that the insurance is to date from the oral agreement. But it is not

unusual for applications for insurance, particularly life insurance, to provide that the insurance shall not take effect until the delivery of the policy; and in such cases it is reasonably held that no risk is assumed until such delivery. Quite frequently it is provided in the application for life insurance, and occasionally for insurance against loss of property by fire, that the insurance shall not become effective until the application shall be accepted by the home office or a principal officer of the company, or the application is made subject to a provision for such acceptance, and sometimes the agent has authority, and exercises it, to provide that, pending acceptance or rejection, the applicant shall be considered insured. Where acceptance or delivery is necessary to put the insurance into effect there will, of course, be no risk until the things precedent agreed upon shall happen. Instances are to be found where the payment of premium is made a condition precedent to the consummation of the insurance contract, or to the delivery of the policy.

The rule is not, therefore, that *every* contract for insurance will authorize recovery in case of loss in the absence of a policy, independent of other agreements or conditions. The agreement itself, or the application, may show that the contract was not one for present insurance, but for insurance to take effect in the future, depending upon some condition, such as the acceptance of the application, or delivery of the policy, or upon the performance of some act, such as the payment of premium.

Again, it is often a nice question whether the negotiations of the parties have resulted in a complete contract—whether there has been such a meeting of minds as to render nothing else necessary to completion of the agreement. And the difficulty usually encountered, in attempting to recover for a loss occurring in the absence of a policy of insurance, has been to establish the making of a complete and binding contract, as to which the policy would be but a mere memorial covering an agreement already

fully and completely entered into. This has generally been an easier matter, in cases of fire insurance, than in insurance upon life, on account of the usual larger authority of fire insurance agents, the custom of such agents to issue policies already in their possession, and the greater facility with which such business is ordinarily conducted.

It is probably safe to say that it is a matter of common knowledge that policies of life insurance are generally written at the home office, or at least by some principal officer, which also usually has the right of acceptance or rejection of the risk; and there is nothing in the petition in this case to show a different custom as to defendant. Indeed, the business is shown to have been transacted with agents, and the policy was thereafter to be written, and it is not to be assumed from any averment of the petition, we think, that the agents themselves were to write and issue the policies. Under the code, pleadings are to be liberally construed, and the common law rule that they are to be construed most strongly against the pleader is not applicable. (Cone v. Ivinson, 4 Wyo., 203.) Moreover, the petition does not charge any such authority in the agents, but, if anything, rather negatives it. It is alleged that the agents were authorized to solicit contracts of insurance, to make contracts for policies of insurance, and to receive and receipt for money and premiums thereon, on behalf of defendant. The added averment that they were authorized generally to transact defendant's business in Wyoming might mean much or little under different circumstances. We think, in its connection, it is not to be construed as averring their authority to write and issue policies.

It is not entirely clear that, because an action may be brought upon an oral contract for insurance for a loss occurring before the issuance of the policy, an action may not be maintainable to recover the premium, or at least a proportionate part of it, if no such loss has occurred, upon the failure or refusal of the company to write and deliver

the policy as agreed, or that in every such case the damage can be only nominal. That such is the law has been denied in a few cases where the direct question has been to some extent involved.

In Lawrence v. Griswold, 30 Mich., 410, suit was brought upon a premium note for life insurance. The note provided that the policy should be void unless the note was paid at maturity. It was given for three months to the superintendent of agencies of the company. Defendant testified that he had never received any policy, and had received no consideration for the note. It seems that he endeavored to show that, as a part of the consideration of the note, he was to receive an appointment as agent for the company. That defense was ruled out. The plaintiff's testimony was to the effect that the policy had been sent to the company's agent, the payee of the note, and he had sent it, with the note, to another party to be delivered on payment of the note. With reference to the point here made by defendant in error, Mr. Justice Christiancy, in delivering the unanimous opinion of the court, said: "If (under the agreement stated in the receipt) the payment of the premium by defendant below would have rendered the company liable for the amount insured, in case of death, as assumed by the court, but which we do not think entirely clear, in an action at law, at least; still, if the evidence shows, as we think it tended to show here, that what the defendant contracted for was a policy of insurance, instead of any such resulting liability, he was entitled to have what he contracted for, and was not bound to accept any such resulting liability as a substitute for the policy. A policy might be much better and more available to him than any such liability, to be shown only by evidence of all the circumstances. He might be able to assign a policy as security for a loan, but such doubtful or resulting liability would not be worth as much for this purpose, if for any other, as the policy itself; and the court erred in treating it as of equal value to the defendant, and denying

to him the right of insisting upon what he had contracted for." A judgment for the plaintiff on the note was reversed. The receipt referred to in the opinion acknowledged the receipt of the premium. There was a balance over and above the note and some cash paid, which balance, the receipt stated, was to be paid on delivery of the policy; and it was also recited therein that the policy was to be binding when the application is accepted by the company and policy issued, and if no policy is written said note and money to be returned.

In Collier v. Bedell, 39 Hun., 238, suit was brought to recover an insurance premium paid to the defendant as agent of an insurance company. Plaintiff contended that he had never received the policy or renewal receipt. Defendant insisted, among other things, that, as he was the agent of the company, his receipt of the money and the parol agreement to insure, bound the company, and, therefore, that the plaintiff was, in fact, insured, although he never received any policy or renewal receipt; and hence he could not recover, citing: Ellis v. Ins. Co., 50 N. Y., 402. The court said: "Now, it may be true that, if a fire had occurred and the plaintiff had chosen to insist upon the facts of verbal agreement and payment, he might have recovered, even though the defendant had never delivered the policy or a renewal receipt. But he had a right to insist that the defendant should procure for him and deliver to him a policy, or it might be a renewal receipt. He was not obliged to rest on the verbal agreement when he had bargained for something more. He was left in uncertainty and insecurity, with no safe evidence on which to rely. * * * The possession of the policy or the renewal receipt was of value. And the plaintiff ought, if his story be true, to recover what he paid."

In a recent case decided by the Supreme Court of Iowa, the plaintiff sued to recover from a life insurance company the amount of several notes given by him and his assignors in payment of the first premium upon certain

policies of life insurance applied for by the makers of the notes respectively. In the case of the plaintiff and one of his assignors, policies had been delivered and returned, and the question was whether there had been an acceptance thereof by the insured. In the case of the other assignor of plaintiff, it was alleged that no policy was ever delivered to him. In regard to the cause of action based upon the note of that party, the discussion in the opinion is meager, so far as the question now under consideration is concerned. But it is said by the court as follows:

"It will be observed that the issue tendered in the second count of the petition is predicated upon the allegation that there was an entire failure on the part of the defendant company to deliver a policy as applied for, and in payment of which the note was given. Counsel for appellant (the company) does not question the right of plaintiff to recover upon proof of the matter alleged in said count."

However, it appeared by the evidence that such a policy had in fact been issued as applied for and sent by mail, but the applicant refused to receive it from the postoffice and ordered it sent back. The court charged the jury upon this count that, if the company had not delivered the policy in a reasonable time, the applicant was not bound to receive it when it was tendered, and, if he did not accept the tendered policy, recovery could be had by the plaintiff for the amount of the note of such applicant. This instruction was held to be erroneous on the ground that it was wholly foreign to the issues presented by the pleadings; since a failure to deliver was the only matter complained of, delivery was in fact made and the subject of unreasonable delay was not suggested except by the instruction. (Armstrong v. Mutual Life Ins. Co., 96 N. W., 954.)

Now, it is true that actions to recover in case of loss are maintainable where an application for insurance has been accepted or an agreement to insure has been entered into, although no policy may have been delivered. While it is sometimes said that the action is in reality upon the con-

tract of insurance, the same as though it had been brought upon an executed policy (Fireman's Ins. Co. v. Kuessner, 164 Ill., 275), in other cases it has been held that the action is properly brought upon the agreement to insure, the damages recoverable in case of loss being the same as if based upon a loss under the policy. In other words, where loss has occurred by fire, in case of fire insurance, or where death has occurred, if it be an agreement for life insurance, the applicant for the insurance or the beneficiary may, upon showing a breach of the contract to insure by failure to deliver the policy, recover as damages the same amount that would have been recoverable upon the policy, had it been issued. And it is usually held, where the company has failed to issue a policy, that recovery does not depend upon making proofs of loss in the manner and at the time which would have been required under the policy. (Campbell v. Ins. Co., 73 Wis., 100; Commercial Ins. Co. v. Morris, 105 Ala., 498; Ellis v. Ins. Co., 50 N. Y., 402; Humphrey v. Ins. Co., 15 Blatch., 504, 12 Fed. Cas. No. 6875; 1 Joyce on Ins., Sec. 38.) This general principle does not seem to be opposed by the case of Hicks v. British Am. Assur. Co., 56 N. E., 743, cited by counsel for defendant in error. The rule laid down in that case was based entirely upon a consideration of the standard policy, which was required by statute to be used in all cases of fire insurance; and in consequence thereof, it was held that a parol contract called for such a policy, whose terms were established by law. However, three of the justices dissented, holding that, notwithstanding the legislative provisions for the standard policy, where none had been issued, and loss occurred, proofs of loss as required by such policy were not necessary as a condition precedent to recovery.

Again, it is well established that a parol agreement to insure may be specifically enforced in a court of equity by requiring the issuance of the policy as agreed, either before or after loss; and that, in such a case, the court,

having acquired jurisdiction, will afford full relief by awarding proper damages in case of loss. (Taylor v. Ins. Co., 9 How. (U. S.), 390; Commercial Fire Ins Co. v. Morris, 105 Ala., 498; Commercial Mutual, &c., Ins. Co. v. Union Mutual, &c., Ins. Co., 19 How., 318; Woodby v. Ins. Co., 31 Gratt., 362; 16 Ency. L., 853.) It was said in Commercial, &c., Co. v. Morris, *supra,* that there would be no necessity for courts of equity to entertain jurisdiction to enforce specific performance if an agreement to insure was in legal effect the same as a contract of insurance.

It is also held that where a company delivers a policy different from that contracted for, the applicant may refuse to accept it, and sue to recover the premium paid. (LaMarche v. Ins. Co., 126 Cal., 498; 58 Pac., 1053; Mutual Life Ins. Co. v. Gorman (Ky.), 40 S. W., 571; Gentry v. Ins. Co., 15 Mo. App., 215; Tifft v. Ins. Co., 6 Lans. (N. Y.), 198.) And when a contract of insurance is void *ab initio,* or where the risk never attached, the premium paid may be recovered back as money had and received. (Waller v. Northern Assurance Co., 64 Ia., 101, and cases cited.)

There is a long line of decisions to the effect that if an insurer wrongfully refuses to accept a premium when it is tendered, or wrongfully declares a life policy forfeited and refuses further to recognize it as an existing contract, such insurer is liable to the insured or the policy holder for the full amount of premiums paid, notwithstanding that the insurance may have been in force for some time. (Am. Life Ins. Co. v. McAden, 109 Pa. St., 399; 3 Sutherland on Damages (3d Ed.), Sec. 838, and cases cited.) But a different rule is maintained by other courts, viz: that the insured is entitled to recover, in such cases, what is known in the life insurance business as the value of his policy; thus allowing him only the amount in excess of the value of the insurance earned by the company in carrying the risk. (Lovell v. Ins. Co., 111 U. S., 264.) The author of Sutherland on Damages considers this the more reasonable rule.

If there is any substantial foundation for a suit in equity for specific performance to enforce the issuance and delivery of the policy before, as well as after, a loss insured against, it would seem to necessarily follow that an action at law would lie under the same circumstances for the recovery of whatever damages may have accrued on account of the failure to issue and deliver the policy. And, in view of the various elements which ordinarily aid in determining the rate of annual premium upon a life insurance contract, we think it might be difficult upon the averments in this case to find justification for holding that nothing but nominal damages could be recovered. It appears that the entire premium was to be paid in the course of ten years, although plaintiff's life might be prolonged beyond that period. It is not clear, therefore, that the court ought arbitrarily to conclude that the policy would possess no value after the year for which the premium was paid.

The time of the maturity of the note is stated in the petition, and it is alleged that the policy was agreed to be delivered before such maturity; and that it was agreed that the company should not sell the note before maturity, but should hold it until the policy should be written and delivered, and approved and accepted by plaintiff. It is also alleged that they did sell the note and appropriate the proceeds, and that the policy was never issued or delivered. In such case, it is doubtful, to say the least, if a demand for the policy was necessary, the time for delivery being fixed by agreement. (Western Mass. Ins. Co. v. Duffey, 2 Kan., 347.) Demand, however, is alleged. It is urged that, as time of demand is not stated, it must be presumed to have occurred immediately before filing the petition; but the petition before us is an amended petition, and there is nothing in the record to show when the suit was instituted, or the original petition filed. If such a presumption attaches at all, it would refer to the commencement of suit, rather than to the time of filing an amended petition. If essential to defendant's case, it may require the petition in this respect to be made more definite and certain.

The plaintiff having executed and delivered a note to defendant's agents in consideration of an agreement that the defendant would issue and deliver to plaintiff a life insurance policy within a stated time, and the defendant having received and appropriated the proceeds of the note, and failed and neglected to deliver the policy, the plaintiff being without fault, we think, upon reason and authority, that the plaintiff would be entitled to consider the contract as rescinded by the defendant, and recover the sum advanced as money had and received. (Chitty on Contracts, 689; Randlet v. Herren, 20 N. H., 102; Nash v. Towne, 5 Wall., 689; Carter v. Carter, 14 Pick., 424; Armstrong v. Mutual L. Ins. Co., 96 N. W., 994; Lawrence v. Griswold, 30 Mich., 410; Collier v. Bedell, 39 Hun., 238; Stillwell v. Ins. Co., 83 Mo. App., 215.) Under the contract pleaded, the note was to be held until the delivery and acceptance of the policy. This event never occurred, if the averments be true. Chief Justice Shaw said, in Carter v. Carter, *supra*, that it is well settled that where one receives money to hold upon a condition, and the condition does not happen, whether through his own default or otherwise, or for a special purpose, and that purpose is not accomplished, the party receiving cannot conscientiously retain the money, and thenceforth holds it in trust for the party who paid it, and is bound *ex aequo et bono*, to repay it on demand.

Should there be any reason to doubt the correctness of this view of the case, there is another consideration that leads to the same result and clearly requires a reversal of the judgment. We are unable to assent to the proposition that the allegations of the petition show a completed contract of insurance, so that the defendant would have been liable, had death occurred during the period covered by the premium paid, or within any period, to pay the amount of the insurance to the beneficiary. And hence there is no showing that the plaintiff had received any benefit from the contract. In general, the principle is well settled that where the parties to a contract intend that it shall be closed and

consummated prior to the formal signing of a written draft, the terms having been mutually understood and agreed upon, the parties will be bound by the contract actually made, although it be not reduced to writing; but, on the other hand, if the parties do not intend to close the contract until it shall be fully expressed in a written instrument, properly attested, then there will be no completed contract until the agreement shall be put into writing and signed. The Supreme Court of Maine state the principle briefly as follows: "If the written draft is viewed by the parties merely as a convenient memorial or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed." And that court mentions some circumstances as helpful in determining which view is entertained in a particular case; such as whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. (Steamship Co. v. Swift, 86 Me., 248; 9 Cyc., 280-282; Hodges v. Sublett, 91 Ala., 588; Sanders v. Pottlitzer, 144 N. Y., 209; Spinney v. Downing (Cal.), 41 Pac., 797.)

This general principle has been frequently applied to insurance contracts. From the many cases denying the consummation of such a contract, upon particular facts, in the absence of a delivery or acceptance of the policy, we cite the following, as illustrating the application of the principle, and somewhat persuasive upon the facts in this case: Farmers', &c., Ins. Co. v. Graham, 50 Neb., 818; Dickerson's Admr. v. Provident, &c., Life Assur. Soc. (Ky.), 52 S. W., 825; Harmickell v. N. Y. Life Ins. Co., 111 N. Y., 390; Insurance Co. v. Young's admr., 23 Wall., 85; McCully's Admr. v. Phoenix Mut. Life Ins. Co., 18 W. Va., 782;

Commercial Fire Ins. Co. v. Morris, 105 Ala., 498; Rogers v. Ins. Co., 41 Conn., 97; Stillwell v. Ins. Co., 83 Mo. App., 215.

What are the allegations of the petition? In the first place, it is to be observed that the petition nowhere states that there was any agreement that the insurance would be in force before the issuance of a policy; nor is there any averment showing what, if any, agreement there was as to the time when the insurance should take effect. It is hardly to be assumed that it was understood to run from the date of the oral agreement, since the applicant was required thereafter to submit to a medical examination; and it was not then known whether he would be found to be an acceptable risk.

But the controlling circumstance in this respect is the fact, as alleged, that as a part of the oral contract, it was agreed that the premium note should not be transferred or negotiated, but should remain in the possession of the defendant until the policy should be written and delivered, found to be satisfactory, and approved and accepted. Can there be anything clearer, if this averment be true, than that the plaintiff declined to rely upon the oral negotiations or promises, and insisted that before the appropriation of the premium by the company, he should receive and accept the policy; and that he should find it to conform to the promises made by the agents. The conclusion seems irresistible that the plaintiff refused to be bound until the promises of the company's agents should be confirmed by the policy itself; and if he was not bound, the company was not. (23 Wall., 85.)

There can be no doubt but that a life insurance company has the absolute right to insist that it shall accept an application and issue a policy before it shall be bound as an insurer; neither can there be any doubt of the right of one desiring or applying for insurance to require a delivery to him, and acceptance by him of the policy before he will be bound.

It is true a negotiable note was executed for the first year's premium; but it was so executed and delivered upon condition that the representations of the agent would be confirmed by and expressed in a policy to be delivered to and accepted by the maker.

It is to be said that in this country parties do not customarily procure life insurance for a limited period of time. These parties were not intending to contract for an insurance upon their lives for a few months or a year; nor were they expecting that such insurance was to be based solely upon their oral negotiations with the agents. It is usual, if not universal, for a contract of life insurance to be at some time expressed in a written policy to be held by the insured or the beneficiary. A reasonable time is ordinarily required for the preparation and delivery of the policy; and it may happen in occasional instances that death occurs before the policy can be written and transmitted, and that under the stipulations of the parties the insurer will be liable.

In this case, however, a time for delivery of the policy was stipulated; and provision was made for its acceptance before the right of the company to the premium should attach. We think that, had death occurred, the proposition could not have been successfully maintained upon the present allegations that there was a completed contract of insurance so as to bind the company, notwithstanding the failure to deliver the policy; at least as to plaintiff and those of his assignors who were in the same position.

In the case of Dickerson's Admr. v. Provident, &c., Soc., *supra*, suit was brought to compel the delivery of a policy of life insurance on the life of the decedent, and to recover the amount thereof. It appears that when the application for insurance was made the decedent was undecided as to whether he would take it, and it was understood between himself and the agent that he could finally decide when the policy came, if his application was approved and accepted. It was accepted and a policy issued and sent to the agent,

being received by the latter before the death of the decedent. But it was never otherwise delivered. It was held that, as the decedent was under no obligation to take the policy when it came, there was no meeting of minds that is essential to the formation of every contract.

In Harnickell v. N. Y. Life Ins. Co., *supra*, the agent of defendant entered into an agreement with the plaintiff by which two policies of inusrance subsequently issued by defendant were to be accepted by plaintiff, only upon condition that certain other policies then delivered by plaintiff to the agent should be surrendered by him to the issuing companies, and their surrender value in cash paid to him or paid-up policies given in exchange therefor, in either case in amounts satisfactory to plaintiff. The agent failed to make satisfactory arrangements as to the surrender of the other policies; and the action was brought to have it adjudged that he had the right to return the policies issued by defendant, and to obtain the surrender to him of certain notes and a check given by him. His right was sustained. The court said that an individual may refuse to be bound by a policy of insurance until he has absolutely received and accepted it.

The demurrer should have been overruled. For the error committed in sustaining it, the judgment will be reversed, and the cause remanded with directions to the District Court to overrule the demurrer.          *Reversed.*

CORN, C. J., concurs.

KNIGHT, J., did not sit.