**Freeman D. FOWLER, Appellant
(Plaintiff),**

v.

**Edward A. FOWLER, Appellee
(Defendant).**

**Edward A. FOWLER, Appellant
(Defendant),**

v.

**Freeman D. FOWLER, Appellee
(Plaintiff).**

Nos. 96–39, 96–40.

Supreme Court of Wyoming.

March 7, 1997.

Mark L. Carman and David M. Gosar of Williams, Porter, Day & Neville, P.C., Casper, for Freeman Fowler.

William L. Miller of Miller & Fasse, P.C., Riverton, for Edward Fowler.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

This dispute is between Freeman Fowler (the father) and Edward Fowler (the son) over the ownership of a ranch located in Fremont County. Both parties appeal from the trial court's order which found that an oral contract existed between the parties, that the doctrine of partial performance removed the oral contract from the statute of frauds, that specific performance was appropriate in this case, that a statute of limitations bar did not exist, that the father breached the oral contract, and that the son waived his right to receive back wages.

We reverse.

## ISSUES

The father requests our review of the following issues:

1. Did the alleged oral agreement to transfer the Willow Bow Ranch from Dr. Fowler to Ed Fowler contain all essential terms necessary for an enforceable contract?

2. Did Ed Fowler prove by clear and convincing evidence all the elements of the part performance exception to the statute of frauds to remove this alleged oral contract from operation of the statute?

3. Was sufficient evidence presented to support a finding that an oral contract existed?

4. Did the judgment nunc pro tunc impermissibly correct judicial errors in the original order?

The son presents a single issue in his cross-appeal:

I. Did the Trial Court err when it found that the Defendant/Cross Appellant Edward A. Fowler had waived his right to back wages?

## FACTS

In October of 1971, the father, who was a physician in Idaho Springs, Colorado, and his wife purchased a small ranch located in Fremont County which became known as the Willow Bow Ranch. When the ranch was first acquired, the father's daughter and her husband managed it. The father suffered a stroke in the early 1970's and was forced to retire from his medical practice. From that time until 1990, the father and his wife spent part of their time at their home in Idaho Springs and the rest of their time at the ranch.

About a year after the father's stroke, the father became unhappy with his daughter, and he asked her to leave the ranch. In September of 1974, the son resigned from his position with the Fort Collins, Colorado, police department, and he and his wife moved to the Willow Bow Ranch so that he could manage the ranch. The father's wife died in 1990, and the father subsequently spent most of his time at the Willow Bow Ranch, living in a house separate from the one in which the son lived.

In 1992, a dispute arose between the father and the son. The father asked the son to leave the ranch, and, when the son refused to do so, the father filed an ejectment action against him. The son counterclaimed for, among other things, breach of contract, alleging that he had an oral contract with the father.

After a bench trial, the trial court denied the father's request for ejectment and granted the son's request for specific performance. The trial court found that an oral contract existed between the father and the son and that the doctrine of partial performance removed the contract from the operation of the statute of frauds. The trial court found that the terms of the oral contract were as follows: (1) The son would leave his job and home in Colorado to manage the Willow Bow Ranch, and he would receive the same salary

that he was receiving in Colorado as well as the ranch, including the livestock and machinery; and (2) the father would have a life estate in the property.

The trial court awarded the land, livestock, and machinery to the son subject to the father's life estate. Additionally, the trial court found that the son waived his claim for back wages. Both parties appeal from the trial court's order.

## STANDARD OF REVIEW

The primary issue in this case is whether the trial court correctly determined that the father and the son had entered into an oral contract. Since all the issues involved in this case hinge on whether an oral contract existed, we will proceed with that query.

■■■ Whether an oral contract exists is a question of fact to be determined by the trier of fact. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 218 (Wyo.1994). We, therefore, apply our traditional standard of review to determine whether sufficient evidence supported the trial court's factual findings.

> "[O]n appeal, the Supreme Court assumes that evidence in favor of the successful party is true, leaves out of consideration entirely the conflicting evidence presented by the unsuccessful party, and gives the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. Furthermore, a reviewing court cannot substitute its judgment of the facts for that of the trial court unless the trial court's judgment is clearly erroneous or contrary to the great weight of the evidence."

*McCormick v. McCormick*, 926 P.2d 360, 362 (Wyo.1996) (quoting *Wyoming Sawmills, Inc. v. Morris*, 756 P.2d 774, 775 (Wyo.1988)). The party who alleges that a contract exists bears the burden of proving the terms of that contract. *In re Estate of Bell*, 726 P.2d 71, 75 (Wyo.1986).

## DISCUSSION

The father contends that sufficient evidence did not support the trial court's determination that an oral contract existed be-

tween the father and the son. The son counters that the trial court correctly found the existence of an oral contract and that the trial court properly ruled that there had been substantial partial performance which removed the contract from the operation of the statute of frauds.

■ The statute of frauds is an expression of " 'fixed legislative policy of the state' " and is " 'absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol testimony.' " *Remilong v. Crolla*, 576 P.2d 461, 464 (Wyo.1978) (quoting *Crosby v. Estate of Strahan*, 78 Wyo. 302, 313–14, 324 P.2d 492, 496 (1958)). The statute of frauds requires that every conveyance of real estate, or any interest therein, shall be in writing. WYO.STAT. § 1–23–105(a)(v) (1988). Equitable exceptions exist to the statute of frauds, but we restrict, rather than expand, those exceptions, even when a hardship will occur. *Empfield v. Kimbrough*, 900 P.2d 1153, 1155 (Wyo.1995).

■ When one side of an oral agreement has been fully or substantially performed, the agreement is removed from the statute of frauds. *Id.* "This common law exception to the statute of frauds is a version of equitable estoppel. It prevents a party to a contract from perpetrating a fraud or injustice on the other party when the latter has fully performed under the terms of the oral contract." *Wyoming Realty Company v. Cook*, 872 P.2d 551, 554 (Wyo.1994). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 139 (1981).

■■■ Before a court may order a contract to be specifically performed, the contract terms must be so certain that the court can require the specific thing agreed upon to be done. *Noland v. Haywood*, 46 Wyo. 101, 23 P.2d 845, 846 (1933). This rule applies to oral contracts:

> Obviously, there can be no part performance until there is a definite and complete agreement between the parties. In order to warrant the specific enforcement of a parol contract for the sale of land, on the ground of part performance, all the essential terms of the contract must be established by competent proof, and shown

to be definite, certain, clear, and unambiguous.

. . . .

The rule that a court will not specifically enforce a contract for the sale of land unless its terms have been definitely understood and agreed upon by the parties, and established by the evidence, is especially applicable to oral contracts sought to be enforced on the ground of part performance. An oral contract, to be enforced on this ground, must at least have that degree of certainty which is required of written contracts sought to be specifically enforced.

The parol contract must be sufficiently clear and definite to render the precise acts which are to be performed thereunder clearly ascertainable. Its terms must be so clear and complete as to allow no reasonable doubt respecting its enforcement according to the understanding of the parties.

R.T. Kimbrough, Annotation, *Doctrine of Part Performance in Suits for Specific Performance of Parol Contract to Convey Real Property,* 101 A.L.R. 923, 950–51 (1936) (footnotes omitted). Unless the essential terms of the agreement have been defined with certainty, no contract exists for a court to enforce. *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 334–35 (Wyo.1986). It is well established that courts do not have the power to supply indefinite terms.

The limited ability of courts to enforce indefinite agreements is a prominent factor leading to a reluctance to enforce oral agreements. Even when the parties perceive the oral agreement as a binding obligation, the courts may be incapable of requiring its enforcement because definite terms that the parties themselves did not agree upon cannot be supplied by the court.

*Davis v. Davis,* 855 P.2d 342, 349 (Wyo.1993).

 In the son's counterclaim, he alleged that his parents had promised that he would be paid $2,000 a month in either salary or equity in the ranch and that they would transfer their remaining interest in the ranch to him by a provision in their wills. The son testified at the trial that the oral contract consisted of the following:

A. ... I was to come to the ranch; I was to bring my family to the ranch; that I was to be paid the same salary that I was—

. . . .

A. That I was to receive the same salary that I was receiving in Fort Collins; that any monies that I did not take in salary were to go to my equity in the ranch; that I would be building a ranch for myself, for my father, for my children, for my—for all of us. It was to be our family ranch from then on.

Some of the son's other witnesses testified that they believed that the ranch would be the son's property upon the death of his parents.

The only evidence that an oral contract existed came from the son. Nevertheless, neither his testimony nor any of the other evidence which he presented to the trial court defined the essential terms of the contract. His different versions of the essential terms of the contract were inconsistent, and they contradicted one another. The son claimed that the contract allowed him to build equity in the property by not receiving full wages for his labor. He also claimed that, upon his father's death, he would receive the remaining equity and all personal property which was located on the ranch. There was no need for the son to build equity in the property since the only way he was going to receive the ranch was through his father's will when the father died.

Furthermore, no evidence was introduced which indicated what price the son would pay for the ranch, there was nothing to establish how much equity the son would have to build in order to complete the contract, nor was there a time frame specified within which the contract would be fully performed. Finally, the son's testimony in his divorce trial that he did not own the property and that all he got out of it was an opportunity to enjoy a pretty good life ran contrary to what he claimed in this case.

Although we sympathize with the son's situation in that he managed this ranch for

approximately twenty years, believing that it would belong to him someday, the fact of the matter is that, in the absence of written or definite contractual terms, the only thing the evidence established was that the son had an expectation of inheriting the ranch after the deaths of his parents. The lack of certainty in essential contractual terms forces us to determine that an oral contract did not exist. All that existed was a suggestion and expectation that the son's labors would be rewarded in his parents' wills.

We conclude that sufficient evidence did not support the trial court's finding that an oral contract existed between the father and the son because the terms of the alleged oral contract were not sufficiently definite. Our conclusion on this issue is dispositive, and we, therefore, will not address the parties' remaining issues. *See Rialto Theatre, Inc.,* 714 P.2d at 334; *Trautwein v. Leavey,* 472 P.2d 776, 778 (Wyo.1970); *Groeneveld v. Dean,* 40 Wash.2d 109, 241 P.2d 443, 444 (1952).

Reversed.