**FROST CONSTRUCTION COMPANY,
Appellant (Plaintiff),**

v.

**LOBO, INC., a Wyoming corporation; and
Carr Construction Co., Inc., a Wyoming
corporation, Appellees (Defendants).**

No. 97–32.

Supreme Court of Wyoming.

Jan. 16, 1998.

Joseph E. Darrah and S. Joseph Darrah of Darrah & Darrah, P.C., Powell, for Appellant.

David B. Hooper of Hooper Law Offices, P.C., Riverton; and Tom A. Glassberg of Hooper Law Offices, P.C., Teton Village, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Frost Construction Company appeals from the order which dismissed its complaint and granted a judgment in favor of Appellees Lobo, Inc. and Carr Construction Co., Inc. (the contractors) on their counterclaim.

We affirm.

## ISSUES

Frost Construction presents a number of issues for our review:

A. Was there an unconditional acceptance of the essential terms of the quote sufficient to form a contract?

B. Was it error for the lower court to find a contract when the parties both agree that no contract was formed?

C. Alternatively, did the lower court err in failing to consider custom and trade usage when it found a formal contract to exist?

D. Did the lower court violate appellant's due process rights when it held appellee[s] would not be required to prove the liability elements of promissory estoppel?

E. Did the lower court err in excluding evidence of mitigation of damages and lack of reliance?

## FACTS

The contractors formed a joint venture to bid on the highway construction project between Buffalo and Gillette, which the Wyoming Department of Transportation (WYDOT) let in May of 1993. During the early morning hours of May 13, 1993, prior to the bid letting, Frost Construction delivered a complete eight-page proposal to the contractors for the paving work. The written proposal contained all the exact quantities specified by WYDOT for all the paving.

Frost Construction's proposal was the lowest offer that the contractors received, and they relied upon this proposal in their bid to WYDOT. A week later, WYDOT awarded the job to the contractors, and on May 22, 1993, the contractors received their contract from WYDOT. On the same day, the contractors issued a subcontract to Frost Construction. The subcontract incorporated all the prices, quantities, terms, and conditions contained in Frost Construction's eight-page proposal. The subcontract was a "Standard Sub-contract Agreement" which had been published by Associated General Contractors of Wyoming, Inc. This was the subcontract form which was customarily used in the Wyo-

ming highway construction industry and was the exact contract form which Frost Construction expected the contractors to use.

On February 18, 1994, approximately nine months after the bid letting, Frost Construction sent a letter to the contractors which stated the following:

Our original quotation stipulated the project had to be ready for the commencement of surfacing operations by May 1, 1994 and that we would necessarily be able to proceed uninterrupted by other operations (other than traffic switch-over) to accommodate our completion by July 1, 1994.

Obviously, our quoted prices were based on these conditions in addition to the exclusion of the off-project work to further ensure our timely demobilization.

Inasmuch that this was the only period available to us, our proposal is not valid except under these circumstances.

On February 23, 1994, the contractors responded to Frost Construction's letter in the following manner:

While in the future we would greatly appreciate your placing any conditions or constraints on your quotation, we have every expectation of being able to meet your scheduling requirements. Please return your signed subcontract promptly so that the submittal process will not cause delay.

On March 4, 1994, Frost Construction sent a new subcontract to the contractors which differed from the original subcontract in various respects. First, the new subcontract deleted substantial quantities for "off-project" work which were included in Frost Construction's proposal and in the original subcontract. Second, the new subcontract proposed to impose liability upon the contractors for consequential damages for any delays to Frost Construction's work regardless of whether or not such delays were caused by the contractors.

The contractors rejected the new subcontract. They informed Frost Construction by letter on March 11, 1994, that there was no reason to believe that Frost Construction's scheduling requirements could not be met, but they insisted that the terms of the initial proposal be adhered to and that, if Frost Construction did not return the original subcontract agreement properly executed by March 18, 1994, they would have no choice but to replace Frost Construction as the paving subcontractor. On March 21, 1994, when they had not received an executed subcontract, the contractors faxed a letter to Frost Construction, notifying it that they could wait no longer to get the paving portion of the job under subcontract and that, therefore, they were going to subcontract the work to another paving contractor. The contractors then subcontracted the paving work to another paving company and informed Frost Construction that they had done so, adding that they had mitigated their damages as much as possible and would look to Frost Construction to cover the difference.

Frost Construction filed a complaint, alleging that the contractors breached their oral contract which contained the condition precedent that it would be able to commence paving by May 1, 1994, in order to complete its portion of the contract no later than June 30, 1994, when it was committed to start a different project. The contractors counterclaimed, invoking the original subcontract's provisions, for a breach by Frost Construction of its contractual obligation to hold the owner and the contractor harmless from all loss, cost, and expense resulting either directly or indirectly from its failure to faithfully carry out any provision of the subcontract. The contractors alleged that, due to Frost Construction's wrongful actions and breach of their agreement, they were forced to replace Frost Construction with another paving subcontractor, thereby suffering damages.

At the close of Frost Construction's case in chief, the contractors moved for a judgment as a matter of law pursuant to W.R.C.P. 52(c). The trial court granted their motion, finding that Frost Construction's written proposal was an offer which was accepted by the contractors by virtue of the delivery of the subcontract form to Frost Construction. The trial court ruled that the subcontract incorporated all the terms of Frost Construction's offer and that, upon the acceptance of this offer, a contract was formed between the parties. The trial court also determined that

the contractors were entitled to recover on their counterclaim for Frost Construction's breach of the contract. The trial court found that, due to Frost Construction's refusal to perform under the contract, the contractors were damaged in the amount of $90,818.25, the actual cost to the contractors minus the amount that Frost Construction would have completed the project for under the contract. Frost Construction appeals from the trial court's findings of· fact, conclusions of law, and judgment.

## DISCUSSION

### A. Existence of a Contract

■ In Frost Construction's first claim of error, it contends that the contractors did not unconditionally accept the essential terms of its proposal and that, therefore, a contract was not formed. More particularly, Frost Construction claims that, when the contractors forwarded the form subcontract, without including the scheduling conditions and bonding costs that it maintains were communicated orally, they tendered a counteroffer which was not accepted by Frost Construction. The contractors argue that the subcontract incorporated all the prices, terms, quantities, and conditions of Frost Construction's proposal which made it a mirror-image acceptance of the written offer.

■ Whether a contract has been formed is a question of fact. *Wyoming Sawmills, Inc. v. Morris,* 756 P.2d 774, 775 (Wyo. 1988). This Court presumes that the trial court's findings of fact are correct and will not disturb those findings on appeal unless they are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *Narans v. Paulsen,* 803 P.2d 358, 360 (Wyo.1990). The question is not whether we would have reached the same result but is whether sufficient evidence supported the trial court's conclusion. *Id.*

■ The basic elements of a contract are offer, acceptance, and consideration. *McCormick v. McCormick,* 926 P.2d 360, 362 (Wyo. 1996). "When these elements have been established, 'courts conclude that there has been a meeting of the minds and an enforce-able contract exists.'" *Id.* (quoting *Idaho Migrant Council, Inc. v. Warila,* 890 P.2d 39, 41 (Wyo.1995)).

■ Whether a contract has been formed depends upon the parties' intent. *Wyoming Sawmills, Inc.,* 756 P.2d at 775.

"An agreement to make a written contract where the terms are mutually understood and agreed on in all respects is as binding as the written contract would be if it had been executed." *Robert W. Anderson House[w]recking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming,* Wyo., 681 P.2d 1326, 1331 (1984).

"In general, the principle is well settled that where the parties to a contract intend that it shall be closed and consummated prior to the formal signing of a written draft, the terms having been mutually understood and agreed upon, the parties will be bound by the contract actually made, although it be not reduced to writing; but, on the other hand, if the parties do not intend to close the contract until it shall be fully expressed in a written instrument properly attested, then there will be no complete contract until the agreement shall be put into writing and signed." *Summers v. Mutual Life Ins. Co.,* 12 Wyo. 369, 75 P. 937, 943 (1904).

756 P.2d at 776. "An unconditional, timely acceptance of an offer, properly communicated to the offeror, constitutes a meeting of the minds of the parties and establishes a contract." 756 P.2d at 775.

■ The parol evidence rule prevents extrinsic evidence from being used to contradict, subtract from, add to, or vary the terms of an unambiguous contract. *Ames v. Sundance State Bank,* 850 P.2d 607, 609 (Wyo. 1993). If an agreement is in writing and its terms are clear and unambiguous, we will determine the parties' intent by analyzing the agreement without resorting to extrinsic evidence. *Svalina v. Split Rock Land and Cattle Company,* 816 P.2d 878, 881 (Wyo. 1991). An ambiguity is not created by the subsequent disagreement of the parties regarding the contract's meaning. *Id.*

After considering the record in this case in accordance with our standard of review, we conclude that sufficient evidence supported the trial court's specific findings and its determination that a contract had been formed. Frost Construction delivered an eight-page proposal to the contractors the night before the bid letting. The document was clearly entitled "PROPOSAL" and included Frost Construction's name and address and all the unit prices and total prices for the paving work. The proposal stated that it was for WYDOT's Project IM–90–2(95)64, the Buffalo/Gillette project, and Frost Construction's vice-president testified that the proposal was Frost Construction's proposal to the contractors. Once the contractors knew that they had successfully bid the project, they issued a subcontract to Frost Construction. The subcontract was the standard subcontract form that Frost Construction admitted it expected to use. It incorporated all the prices, terms, quantities, and conditions of the eight-page proposal. The evidence established that the parties had reached a meeting of the minds at the bid letting and that they intended to enter into a subcontract agreement. The written subcontract was simply a memorialization of the oral agreement. Frost Construction has not demonstrated an ambiguity in the language of the contract. We, therefore, will not consider extrinsic evidence regarding oral conditions.

### B. No Agreement That a Contract Was Not Formed

Frost Construction asserts that it was error for the trial court to find that a contract existed when both parties stipulated that no contract had been formed. The contractors deny that they ever stipulated that no contract had ever been created.

■ Frost Construction relies upon the mutuality of assent requirement to a valid contract in making this contention. Mutual assent between contracting parties is necessary for the formation of a contract. *Raymond v. Steen,* 882 P.2d 852, 856 (Wyo.1994).

In their motion for a judgment as a matter of law, the contractors referred to Frost Construction's contention that a contract had not been formed between the parties. At

that point in time, the contractors had not presented their case in chief. In their answer and counterclaim, the contractors alleged a breach-of-contract action. Furthermore, the contractors argued in their trial memorandum that they would argue that a contract did exist between the parties given the fact that a valid offer and acceptance had transpired. We conclude that the trial court based its decision that all the elements of contract formation existed upon sufficient evidence and decline to alter that decision.

### C. Custom and Trade Usage Evidence

■ Frost Construction contends that the trial court failed to consider custom and trade usage in its determination that a contract was formed. Specifically, it maintains that overwhelming, unrefuted evidence indicated that oral conditions regarding scheduling are common and to be expected.

■ Express contract terms control over industry usage. *Smithco Engineering, Inc. v. International Fabricators, Inc.,* 775 P.2d 1011, 1016 (Wyo.1989). The trial court found "that the parties did have a discussion on the matter of scheduling and that is embodied in the proposed subcontract in the language that the subcontractor was to work with the contractor to achieve the earliest possible completion of the project." The trial court properly refused to resort to custom and trade usage on this issue because the contract contained express language regarding the scheduling of the paving work.

### D. Due Process Rights

Frost Construction breaks up its due process claim of error into two parts. It initially contends that the trial court violated its due process rights by granting the contractors' W.R.C.P. 52(c) motion because it had presented a prima facie case for a promissory estoppel cause of action. Next, Frost Construction asserts that its due process rights were violated when the trial court improperly granted a judgment in favor of the contractors' counterclaim without requiring the contractors to put on evidence in support of a promissory estoppel claim and without allow-

ing Frost Construction to assert affirmative defenses against a promissory estoppel claim.

In requiring due process in civil litigation, we have said:

> "Due process of law includes notice and an opportunity to be heard. That notice and the opportunity to be heard are unquestionably incidental to affording due process of law. Due process of law is guaranteed to a party who has a legitimate property interest at stake under the Fourteenth Amendment of the Constitution of the United States and Article 1, Section 6 of the Constitution of the State of Wyoming."

*Loghry v. Loghry,* 920 P.2d 664, 668 (Wyo. 1996) (quoting *Barker Brothers, Inc. v. Barker–Taylor,* 823 P.2d 1204, 1208 (Wyo.1992) (footnote omitted)) (citations omitted).

 W.R.C.P. 52(c) provides in pertinent part:

> (c) Judgment on Partial Findings. If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence.

When we review a trial court's decision to grant a judgment as a matter of law, we must take the unsuccessful party's evidence as being true and give it all favorable and reasonable inferences. *Garaman, Inc. v. Williams,* 912 P.2d 1121, 1123 (Wyo.1996); *Mountain View/Evergreen Improvement and Service District v. Casper Concrete Company,* 912 P.2d 529, 531 (Wyo.1996); *Kaiser v. Farnsworth Drilling Co., Inc.,* 851 P.2d 1292, 1295 (Wyo.1993).

Having sustained the trial court's conclusion that a contract existed between the parties earlier in this opinion, we will examine the current issue in that context. The trial court granted the contractors' motion, finding "that there is [no] substantial evidence to support the essential elements of the plain-

tiff's cause of action." It also made the following findings of fact and conclusions of law:

> A) The written quote ... submitted by Plaintiff to Defendants was an offer which was accepted by Defendants on or about May 23, 1993, when Defendants submitted a standard subcontract form to Plaintiff after Defendants had been awarded a contract on Defendants' proposal to the Wyoming Department of Transportation which incorporated the terms of Plaintiff's offer.
>
> B) Upon acceptance of Plaintiff's offer a contract was formed between the parties which was soon thereafter modified at the request of the Plaintiff to the extent that Defendants were to supply the "oil" and related asphalt products.
>
> C) In March, 1994, Plaintiff refused to perform the paving work it had agreed with Defendants to complete and Defendants were then required to find another paving contractor to perform the work Plaintiff had agreed to complete.
>
> D) As the direct result of Plaintiff failing to perform its paving agreement with Defendants, Defendants were damaged in the sum of $90,818.25 which represents the additional cost to Defendants to get the paving work completed that Plaintiff had agreed to perform but then refused to do.
>
> The Court concludes as a matter of law that Defendants are entitled to recover $90,818.25 on their Counterclaim plus their costs of action incurred herein from Plaintiff by reason of the Plaintiff's breach of contract. Plaintiff's Complaint should be dismissed with prejudice.

 Frost Construction's complaint alleged that the parties entered into an oral agreement which contained an express condition precedent that Frost Construction would be able to commence work by May 1, 1994, and that the contractors breached the agreement. Since Frost Construction did not plead a promissory estoppel cause of action, it is difficult to understand why it claims that its due process rights were violated when the trial court did not consider its evidence regarding promissory estoppel. The evidence, even when viewed in the light most favorable to Frost Construction, establishes the exis-

tence of a contract. Recovery under the promissory estoppel theory is not a matter of contract but, instead, is predicated on the promisee's change in position, to his detriment, as a consequence of the promise made. *Romberger v. VFW Post 1881,* 918 P.2d 993, 995 (Wyo.1996). Since promissory estoppel applies only if a contract does not exist, a promissory estoppel argument in this case, where the evidence demonstrates the existence of a contract, is incongruous.

■ Frost Construction contends throughout its brief that the agreement contained a condition precedent that the contractors would have the project ready for Frost Construction to begin work on May 1, 1994, and that the contractors breached that condition. The assertion that the nonperformance of a condition precedent constitutes a breach of the agreement is incorrect. A breach of contract is the nonperformance of some duty created by a promise. 3A ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 634 at 33 (1960). A condition precedent should not be described as broken. *Id.* "The condition merely does not exist or does not occur. If the condition consists of action by some person, it may properly be said not to be performed; but such non-performance is not a breach of contract unless he promised to render the performance—to perform the condition." *Id.* The trial court correctly dismissed Frost Construction's complaint because the evidence did not support its breach of contract claim, the only claim alleged in the complaint.

We turn next to Frost Construction's argument that its due process rights were violated because the contractors were awarded a judgment without being required to prove the elements of promissory estoppel and because Frost Construction was not allowed to assert affirmative defenses to a promissory estoppel claim. This argument misinterprets the trial court's findings of facts and conclusions of law. The trial court based its judgment upon the cause of action in the counterclaim—a breach of contract allegation. Therefore, Frost Construction's arguments regarding the contractors' failure to prove the elements of promissory estoppel and Frost Construction's inability to assert affirmative defenses to a promissory estoppel claim are inconsequential.

Frost Construction does not direct us to any place in the record which would indicate that it was prevented from fully presenting its evidence. It appears that Frost Construction was afforded adequate notice and opportunity to be heard at a meaningful time and in a meaningful manner. Since the case was decided under traditional contract theory, Frost Construction's due process rights were not violated by the fact that the trial court did not consider or require evidence of promissory estoppel.

### E. Damages

■ Frost Construction contends that the trial court improperly utilized the "total-cost method" in determining the damages that were awarded to the contractors on their counterclaim.

The proper measure of damages is the amount of the contractor's extra costs directly attributable to the ... breach[ ]. Obviously, the preferable method for calculating such losses would be to itemize and total the cost of each piece of equipment or material and each man hour necessitated by the unanticipated conditions encountered in performing the contract. Such exactness is not always possible or necessary.

The total-cost method of computing recovery, while generally disfavored by the courts, is permissible where the breach or unexpected conditions pervade substantial areas of performance. The United States Court of Claims in *WRB Corporation v. The United States,* 183 Ct.Cl. 409, 1968 WL 9146 (1968), set out the requirements for use of the total-cost method to prove damages:

"... The acceptability of the method hinges on proof that (1) the nature of the particular losses make[s] it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses...." 183 Ct.Cl. at 426.

**398**

*State Highway Commission of Wyoming v. Brasel & Sims Construction Co., Inc.,* 688 P.2d 871, 877–78 (Wyo.1984) (citations omitted).

In the case at bar, Frost Construction's breach pervaded its entire obligation under the contract. The trial court's utilization of the total-cost method, therefore, was appropriate.

■ Frost Construction asserts that the contractors failed to satisfy the third and fourth requirements of the *WRB Corporation*[1] test. Proven actual costs in contract claim cases are presumed reasonable, and the burden was on Frost Construction to rebut this presumption with evidence that the costs were unreasonable. *Brasel & Sims Construction Co., Inc.,* 688 P.2d at 879. The contractors introduced the schedule of actual quantities determined by WYDOT when the project was completed to prove what its paving costs would have been if Frost Construction had performed its contract. It then subtracted the amount Frost Construction would have completed the project for had it performed under the contract. Regarding Frost Construction's contention that the contractors failed to satisfy the fourth element under the *WRB Corporation* test, we just say that Frost Construction has failed to adequately enlighten us as to how the contractors were responsible for added expenses.

### CONCLUSION

The trial court did not commit reversible error by granting the contractors' motion for a judgment as a matter of law. Neither did it err when it ruled in favor of the contractors on their counterclaim and awarded them damages.

Affirmed.

1. *WRB Corporation v. United States,* 183 Ct.Cl. 409 (1968).