**Sue GIVENS, Appellant (Defendant),**

v.

**Edward A. FOWLER, Appellee (Plaintiff).**

No. 98–329.

Supreme Court of Wyoming.

Aug. 9, 1999.

Drew A. Perkins of Blood & Perkins, P.C., Casper, Wyoming; and Elizabeth Greenwood and Robert Bundy, Pinedale, Wyoming, Representing Appellant.

Thomas A. Fasse and William L. Miller of Miller & Fasse, P.C., Riverton, Wyoming, Representing Appellee.

Before LEHMAN, C.J.; THOMAS, MACY & HILL, JJ.; and DAN R. SPANGLER, D.J. (RET.)

MACY, Justice.

Appellant Sue Givens (the daughter) appeals from the summary judgment that the district court entered in favor of Appellee Edward Fowler (the son).

We affirm.

### ISSUES

The daughter presents the following statement of the issues:

Did issues of material fact exist that precluded summary judgment by the district court on each of the following issues[:]

A.  Did the parties reach a meeting of the minds[?]

B.  If there was a meeting of the minds, is Appellant entitled to recis[ ]ion because of her unilateral mistake or because of Appellee's misrepresentations[?]

C.  If there was a meeting of the minds, did Appellant's lack [of] authority to bind the estate and/or trust of Freeman D. Fowler make the alleged agreement void[?]

### FACTS

The background facts of this case are set out in this Court's decision issued on March 7, 1997, and captioned *Fowler v. Fowler*, 933 P.2d 502 (Wyo.1997). That case involved a dispute between Freeman D. Fowler (the

father) and his son, Edward A. Fowler, the appellee in this case. 933 P.2d 502. The dispute between the father and the son involved whether an oral agreement existed to transfer the Willow Bow Ranch from the father to the son. 933 P.2d at 503. In 1974, the son resigned from his position with the Fort Collins, Colorado, police department and moved to Fremont County to manage his father's ranch with the understanding that he would inherit the ranch upon the death of his parents. *Id.* In 1992, a dispute arose, and the father asked his son to leave the ranch. *Id.* The son refused, and the father filed an ejectment action against him. *Id.* The son counterclaimed for breach of contract, alleging that he and the father had an oral contract which provided in part that the son would receive the ranch upon the death of his parents in exchange for his efforts in running the ranch. 933 P.2d at 503, 505. The district court found that an oral contract existed and awarded the land, livestock, and machinery to the son subject to the father's life estate. 933 P.2d at 503–04. This Court reversed the district court, holding that an oral contract did not exist because the essential terms of the agreement had not been adequately defined. 933 P.2d at 506.

After the trial and while the appeal was pending, a conservator and guardian *ad litem* was appointed to represent the father's interests. A settlement was proposed on January 17, 1997, by an attorney who was acting for the father's conservator and guardian *ad litem.* The proposed settlement would have effectuated the division of the estate into two parts. The son would have received the Willow Bow Ranch, and the daughter would have received the balance of the estate. Each of them would have held the property in trust for their father and paid an amount toward his support. Upon the father's death, the trusts would have terminated, and the parties would have kept the property in the respective trusts. On February 23, 1997, before a settlement could be reached, the father died.

Shortly after the dispute arose between the father and the son, the father executed a will and amended his trust to disinherit the son, making the daughter the sole trustee and beneficiary of his estate. After her father's death, the daughter, being the sole trustee and beneficiary of her father's estate, hired an attorney to revive settlement negotiations with the son. The daughter's attorney contacted the son's attorney on March 12, 1997, to reopen settlement negotiations and faxed a settlement proposal to him, which was almost identical to the proposal that was offered while the father was still alive. That same day, the son's attorney faxed an unqualified acceptance of the offer to the daughter's attorney.

The next day, March 13, 1997, the daughter's attorney called the son's attorney and explained that, because the daughter was not a party in the earlier action, neither he nor his client was aware of the Wyoming Supreme Court's decision in *Fowler v. Fowler* at the time she proposed the settlement offer. The daughter's attorney said he needed to talk to the daughter and would get back with the son's attorney. When the daughter's attorney told the daughter about the predicament, she responded "okay." The daughter's attorney then called the son's attorney and said that "Sue Givens had said 'okay.'" The son interpreted that statement to mean the daughter still desired to settle, and he sent a check to the daughter pursuant to the settlement agreement, along with the written settlement agreement that he had signed. The daughter never signed and returned the settlement agreement nor did she ever return or negotiate the check.

The son filed a complaint, alleging that a contract had been formed and seeking enforcement of that contract. After the daughter answered, the son filed a motion for summary judgment. The daughter opposed the motion, asserting essentially the same arguments that she makes to this Court on appeal. Finding no genuine issues of material fact and that an agreement had been formed, the district court granted the son's motion for summary judgment. The daughter appeals to this Court.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to a

judgment as a matter of law. *Wolter v. Equitable Resources Energy Company, Western Region,* 979 P.2d 948, 950 (Wyo. 1999); *see also* W.R.C.P. 56(c). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo.1997). We review the record from the vantage point most beneficial to the nonmoving party, affording that party the benefit of all the favorable inferences that may be drawn from the facts. *Austin v. Kaness,* 950 P.2d 561, 563 (Wyo.1997). Although whether an oral contract was formed is normally a question of fact, when a dispute does not exist with regard to the material facts, the question presented for our review becomes a question of law. *Shaw v. Smith,* 964 P.2d 428, 435–36 (Wyo.1998); *Enes v. Baker,* 58 So.2d 551, 552 (Fla.1952). We do not accord deference to the district court's decisions on matters of law. *O'Quinn Enterprises v. Central Wyoming Regional Water System Joint Powers Board,* 975 P.2d 1062, 1063 (Wyo.1999).

## DISCUSSION

The daughter argues that a meeting of the minds did not exist with respect to the settlement agreement because she was unaware of the fact that the Wyoming Supreme Court had issued its decision in the underlying case. She asserts that knowledge of that fact was essential to the mutual understanding of the terms of the agreement and that, therefore, a contract was not formed between her and the son.

■ The basic elements of a contract are offer, acceptance, and consideration. *Frost Construction Company v. Lobo, Inc.,* 951 P.2d 390, 394 (Wyo.1998). "When these elements have been established, 'courts conclude that there has been a meeting of the minds and an enforceable contract exists.'" *McCormick v. McCormick,* 926 P.2d 360, 362 (Wyo.1996) (quoting *Idaho Migrant Council, Inc. v. Warila,* 890 P.2d 39, 41 (Wyo.1995)). "'An agreement to make a written contract where the terms are mutually understood and agreed on in all respects is as binding as

the written contract would be if it had been executed.'" *Frost Construction Company,* 951 P.2d at 394 (quoting *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County,* 681 P.2d 1326, 1331 (Wyo. 1984)). "'An unconditional, timely acceptance of an offer, properly communicated to the offeror, constitutes a meeting of the minds of the parties and establishes a contract.'" *Id.* (quoting *Wyoming Sawmills, Inc. v. Morris,* 756 P.2d 774, 775 (Wyo.1988)).

■ In Wyoming, we examine the objective manifestations of the parties' contractual intent to determine whether a contract was formed. *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986, 990 (Wyo.1991). "Under the 'objective theory' of contract formation, contractual obligation is imposed not on the basis of the subjective intent of the parties, but rather upon the outward manifestations of a party's assent sufficient to create reasonable reliance by the other party." *Id.* A party's intention will be held to be what a reasonable person in the other party's shoes would conclude his manifestations to mean. *Shrum v. Zeltwanger,* 559 P.2d 1384, 1387 (Wyo.1977).

■ The daughter complains that she should not be bound to her offer because she did not know that the underlying case had been decided and, without citing any authority, insinuates that it was the son's responsibility to divulge this information. We disagree. The daughter was fully aware that the appeal was being considered by this Court and that the opinion could be issued at any time. It was no one's responsibility but the daughter's to stay abreast of the status of the case.

■ After analyzing the record, we conclude that the uncontested material facts demonstrate that an oral agreement was formed. The daughter made an offer which was unconditionally accepted by the son. When she was told about this Court's decision in *Fowler v. Fowler,* she said "okay" and that response was communicated to the son's attorney. The daughter did not withdraw her written offer or respond to the son's attorney's correspondence to the effect that

an agreement had been reached. Nor did she return the check that the son tendered in an attempt to fulfill the agreement. Her objective manifestations indicated that she still intended to enter into the settlement agreement.

The daughter's attorney attested in his affidavit that

9. After I had disclosed the foregoing information to Sue Givens, Sue stated to me, in a voice that I perceived as being deeply shaken, the sole phrase "okay". I don't ... know whether Sue Givens meant that she was ratifying the agreement or she was stating the word okay in acknowledgment of the information that I had just given her;

. . .

12. I do not know what Sue Givens intended when she state[d] the term "okay". I do know that it was impossible for Sue Givens to understand what she was negotiating for, given the fact that she was never informed of the Wyoming Supreme Court's decision which had a direct impact on the size and value of the property at issue[.]

The daughter averred the following:

8. I was shocked by this information. I told [my attorney] "okay," meaning that I understood what he said. I did not approve or consent to the settlement agreement in light of the new information about the result of the appeal at that time or anytime since then.

These statements are insufficient to prevent a summary judgment because they relate to what the daughter's subjective mind might have been when she said "okay." That the daughter might not have subjectively intended to enter into the settlement agreement is of no consequence because she made sufficient objective manifestations of contractual assent to create a reasonable reliance by the son. *McDonald,* 820 P.2d at 990.

We hold that the objective manifestations of the daughter evidenced her desire to enter into the settlement she proposed to the son even after she learned of this Court's decision in the underlying case. The son's unqualified acceptance of the offer formed the contract and the daughter's later "okay" would be understood by a reasonable person in the son's position to mean she still intended to settle the matter in accordance with the settlement agreement that she proposed.

## A. Recision for Unilateral Mistake

The daughter claims that, even if there was a meeting of the minds, she is still entitled to relief under a unilateral mistake theory. She maintains that her lack of knowledge that *Fowler v. Fowler* had been decided was caused by the son and that he should have known she would not have assented to the agreement had she known the true facts.

■ A mistake by only one of the parties ordinarily does not offer a reason for avoidance of the contract by that party unless the mistake was produced by the conduct of the other party. *Raymond v. Steen,* 882 P.2d 852, 855 (Wyo.1994); *Svalina v. Big Horn National Life Insurance Company,* 466 P.2d 1018, 1020 (Wyo.1970).

The daughter argues that the son deceptively solicited the settlement offer, knowing she was not aware that the underlying case had been decided, in hopes of creating exactly this situation. We are unmoved by the daughter's repeated complaints that the son solicited the offer. It is of no consequence to the determination of this case. Nevertheless, it was the daughter's attorney who telephoned the son's attorney to see whether a settlement offer by the daughter would be fruitful. Furthermore, the offer must have been a reasonable one because it was virtually the same offer that the attorney acting on the father's behalf proposed. We find it peculiar that the daughter is offended by the son's positive response to her inquiry regarding his interest in settling.

■ Additionally, the daughter is charged with the responsibility to use the ordinary means of information available to her and to make reasonably diligent inquiries regarding the facts surrounding her offer. *Schepps v. Howe,* 665 P.2d 504, 509 (Wyo.1983); *Schaffer v. Standard Timber Company,* 79 Wyo. 137, 331 P.2d 611, 615 (1958). She could have easily found out about the status of the

appeal by making a telephone call to the Wyoming Supreme Court Clerk's office. She did not make that inquiry, and she proposed a settlement offer to the son. A contract was formed when the son unconditionally accepted the daughter's offer.

■■■ The daughter's ignorance of this Court's decision in the underlying case was caused not by the son but rather by her own failure to check the status of the appeal. The daughter, therefore, is not entitled to rescind the settlement agreement under a unilateral mistake theory.

## B. Disclosure of Material Fact

The daughter claims that she is entitled to relief because the son breached his duty to disclose the material fact that the underlying case had been decided against him. In making her argument, the daughter apparently encourages this Court to adopt a cause of action for negligent nondisclosure. She points out that this Court discussed the possibility of Wyoming adopting such a cause of action in *Richey v. Patrick*, 904 P.2d 798 (Wyo.1995). In that case, we quoted Restatement (Second) of Torts § 551 (1977), which provides:

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

904 P.2d at 802–03.

■■■ In *Richey*, we stated that we had never had a previous opportunity to determine whether § 551 could be the basis of a cause of action in this state. 904 P.2d at 802. We concluded that, even if we accepted the Restatement, the Patricks' claim would still fail and, therefore, decided not to make that determination at that time. *Id.* We come to the same conclusion in the case at bar. The son denies that any duty or fiduciary relationship existed, and the daughter has failed to demonstrate that such a relationship or duty did exist to trigger the obligation to disclose the information. Furthermore, even after the daughter learned that the opinion had been issued, as we discussed earlier, her objective manifestations indicated she still desired to enter into the settlement agreement.

## C. Authority to Bind Estate

The daughter lastly contends that she lacked the authority to bind the estate to the settlement agreement because the Willow Bow Ranch belonged to the father's trust and because she had not yet been appointed personal representative of the estate. The son counters that this argument is an attempt to create a subterfuge. We agree with the son.

■■■ The Willow Bow Ranch was owned by the father as trustee of his living trust,

which named the daughter as the successor trustee upon the father's death or disability. By operation of the living trust, the daughter became the trustee and sole beneficiary of the father's estate upon his death. She, accordingly, did possess the authority to bind the estate to the settlement agreement.

## CONCLUSION

After examining the record, we conclude that there were no genuine issues of material fact and that the facts demonstrate a settlement agreement was formed between the parties. The son was entitled to a judgment as a matter of law, and the district court properly ordered a summary judgment in his favor.

Affirmed.