FILED
United States Court of Appeals
Tenth Circuit

January 11, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DENISE J. DEHNING,

Plaintiff-Appellant,

v.

CHILD DEVELOPMENT SERVICES
OF FREMONT COUNTY; SCOTT
CARLSON; AL MCCLELLAND;
SANDRA MOSSBROOK; CRAIG
TOLMAN; LAURA CANIGLIO;
KARL FLORENCE; JERRY
NELSON; PAT POWELL; CHERI
COPELAND,

Defendants-Appellees.

No. 07-8008
(D.C. No. 05-CV-249-CAB)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McCONNELL**, and **GORSUCH**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Denise J. Dehning appeals from the district court's order enforcing a settlement agreement and awarding attorney fees and costs incurred in the enforcement action. We affirm.

This suit arises from Ms. Dehning's tenure as a physical therapist for Child Development Services ("CDS"), a non-profit that serves developmentally disabled children in Fremont County, Wyoming. While working at CDS, Ms. Dehning alleged that she was sexually harassed by a fellow employee. When her written grievance about that conduct was not resolved to her satisfaction, she filed a complaint with the Wyoming Fair Employment Protection Agency ("WFEPA"), which in turn referred the matter to the Equal Employment Opportunity Commission ("EEOC"). While her sexual harassment charge was under investigation, she filed a second complaint with the WFEPA in which she alleged retaliation because CDS failed to renew her contract after she complained of harassment. Ms. Dehning's retaliation complaint was likewise referred to the EEOC.

On May 31, 2005, the EEOC dismissed Ms. Dehning's sexual harassment charge and notified her that "to pursue this matter further, [she] must file a lawsuit . . . **within 90 days** . . . ." Aplt. App., Vol. II, Ex. 44 at 2. As to her retaliation charge, the EEOC found reasonable cause to believe her claim, and on June 24, 2005, it issued a right to sue letter. On September 24, 2005, she sued CDS, its board and executive director, and a co-worker for both sexual

harassment and unlawful retaliation under Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

Eventually, the parties engaged in mediation and reached an agreement in which Ms. Dehning agreed to settle her claims against the defendants in exchange for $30,000 and CDS's agreement to hire her as an independent contractor for one year beginning August 2006. Later, however, Ms. Dehning refused to follow through with the settlement, claiming she never agreed to compromise her sexual harassment claim. She also refused to sign the employment agreement because she did not like the language, although she refused to suggest any changes.[1]

The defendants moved the district court to enforce the settlement agreement. Because Ms. Dehning's lawyer withdrew from the representation, she retained new counsel to represent her at the hearing on this motion. At the enforcement hearing, the mediator testified that the confidential mediation statement received from Ms. Dehning's original lawyer described her claims as including both sexual harassment and unlawful retaliation and "we discussed the issues during the entire day." Aplt. App., Vol. IV at 21. He further testified he "gathered the parties after the agreement had been reached and went through each of the terms in the presence and with the parties there. And each consented and indicated that this is the agreement that we had." *Id*. at 26. The next day, the

---

[1] When Ms. Dehning refused to sign the employment agreement or report for work in August 2006, CDS was forced to hire a replacement.

mediator reduced to writing the terms of the agreement. Among other things, he confirmed that in exchange for $30,000, Ms. Dehning's lawyer would prepare a "release [of] all claims, known or unknown," against the defendants, *id*., Vol. III, Ex. 1 at 1, and the defendants' lawyer would prepare a written agreement for CDS to hire her as an independent contractor. CDS also agreed to sexual harassment training and to review and update its policies.

Donald Rissler, Ms. Dehning's first lawyer, testified that the parties' settlement agreement included both her retaliation and sexual harassment claims – the agreement "encompassed all of it. It was a global settlement and I believe everyone understood that." *Id*., Vol. IV at 61. During the mediation, Ms. Dehning showed him a book on sexual harassment and "recited to me and pointed out to me several sections in the book that had to do with sexual harassment law and the rule of damages. So she was fully aware of what was going on during our discussions." *Id*.

For her part, Ms. Dehning testified she tried to avoid the settlement agreement because "it was never explained to [her] what the release document [was] before the mediation conference or at the mediation conference." *Id*. at 52. She acknowledged the existence of an oral agreement to hire her as an independent contractor, but refused to sign the contract because of her disagreement with some of the language. The executive director of CDS testified he understood Ms. Dehning was settling all of her claims, including sexual

-4-

harassment, and had to hire a replacement when Ms. Dehning refused to sign the employment agreement.

Following the enforcement hearing, the district court entered a written order on December 11, 2006, dismissing the case with prejudice and enforcing the settlement agreement, with the exception of the employment agreement because Ms. Dehning's refusal to finalize the employment agreement "constituted a waiver of her right to such agreement." *Id*., Vol. 1, Doc. 43 at 3. The court also found her "refusal to abide by the terms of the settlement agreement was arbitrary, willful, and without cause," *id*., and ordered her to pay the defendants' attorney fees and the mediator's costs to attend the hearing.

On December 19, 2006, the district court granted Ms. Dehning's motion for a stay pending appeal. The same day, the court also granted the defendants' motion for Ms. Dehning to post a bond during the pendency of her appeal. The court later denied her motion to extend the deadline for filing an appeal, and on February 5, 2007, Ms. Dehning filed her notice of appeal *pro se*.

Before us, the defendants argue first that Ms. Dehning's appeal from the orders dated December 11 and 19, 2006, should be dismissed because her notice of appeal was untimely. We disagree. Admittedly, the notice was required to "be filed . . . within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). The district court, however, failed to prepare the separate document required by Rule 58(a) of the Federal Rules of Civil Procedure

for entry of the orders; therefore, judgment did not enter for purposes of filing the notice until "150 days . . . from the entry [of the December 11 and 19 orders] in the civil docket." Fed. R. Civ. P. 58(c)(2)(B). Thus, the February 5, 2007 notice of appeal was timely.[2]

In reviewing Ms. Dehning's appeal on the merits, we are mindful that she is proceeding *pro se* and, accordingly, her papers are due a solicitous construction. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). We are equally mindful, however, that under our precedents the district court "has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citation omitted). And we may review the decision to enforce such an agreement only "for an abuse of discretion." *Id.* An abuse of discretion occurs when the court's decision is based on an erroneous conclusion of law or a clearly erroneous factual finding. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

---

[2] The defendants also moved to dismiss the appeal because Ms. Dehning has not posted the bond pending appeal ordered by the district court in its December 19, 2006 order. We, however, deny this motion as moot in light of our affirmation on the merits of the district court's order enforcing the settlement agreement and awarding attorney fees and costs. *See Bryson v. Volkswagen of Am., Inc.*, 1996 WL 192975, at *1 n.2 (10th Cir. 1996); *Saathoff v. Filenet Corp.*, 1996 WL 294211, at *2 (10th Cir. 1996).

The central question before us – whether a binding contract existed between the parties – is a question of fact, and thus subject to reversal only in the presence of a clear error by the district court. *See Parkhurst v. Boykin*, 94 P.3d 450, 459 (Wyo. 2004) ("[w]hether a contract exists, its terms and conditions and the intent of the parties generally are questions of fact to be resolved by the fact-finder"). The basic elements of a contract in Wyoming are the traditional ones: "offer, acceptance, and consideration. . . . When these elements have been established, courts conclude that there has been a meeting of the minds and an enforceable contract exists." *Frost Constr. Co. v. Lobo, Inc.*, 951 P.2d 390, 394 (Wyo. 1998) (internal citation and quotation marks omitted). More to the point, a unilateral mistake is not grounds "for avoidance of the contract . . . unless the mistake was produced by the conduct of the other party." *Givens v. Fowler*, 984 P.2d 1092, 1096 (Wyo. 1999).

Ms. Dehning admits that she agreed to the settlement agreement, but claims she misunderstood it. To her mind, it encompassed only her retaliation claim and did not include a compromise of her sexual harassment claim. There is, however, no evidence the defendants were responsible for her mistake concerning the scope of the claims included in the agreement. Further, the district court's findings that Ms. Dehning's position was "unrealistic[,]" Aplt. App., Vol. IV at 97, and that the parties reached a contract is supported by the evidence. In addition to the fact Ms. Dehning's testimony was contradicted by every other witness, it was also

belied by her mediation statement, which stated, "[t]his is a sexual harassment and retaliation case[,]" *Id.*, Vol. III, Ex. 9 at 1, and the parties' settlement agreement, which required CDS to provide training and update its policies on sexual harassment.

Ms. Dehning separately argues the employment agreement portion of the settlement violated the statute of frauds because it was not in writing. This argument is, however, irrelevant in light of the district court's conclusion that "the independent contractor agreement has been waived[.]" *Id.*, Vol. IV at 98. Because the district court did not enforce the employment agreement, we do not address whether the statute of frauds applies. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1154 (10th Cir. 2005) (holding we will not decide issues that do not affect the outcome of a dispute).

Lastly, Ms. Dehning claims the district court's authority to assess attorney fees and costs is limited to those instances where the underlying suit is frivolous, unreasonable, or without foundation. Yet this argument ignores the court's inherent authority to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (citation and external quotations omitted); *see also Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1317 (10th Cir. 2000) (holding that "federal courts have . . . inherent power to sanction parties for bad faith conduct *in litigation*"). Because the record supports the district court's

factual finding that Ms. Dehning's litigation conduct in refusing to consummate the settlement agreement was "arbitrary, willful, and without cause," Aplt. App., Vol. III, Doc. 43 at 3, we affirm the award of fees and costs.

For the foregoing reasons, the defendants' motions to dismiss are denied, and the district court's judgment is affirmed.

Entered for the Court

PER CURIAM